**UNITED STATES of America,**
**Plaintiff,**

v.

**Loren R. SQUIRES, d/b/a Stuart**
**Sales Company, Defendant.**

**Civ. No. 73-212-2.**

United States District Court,
S. D. Iowa, C. D.

June 6, 1974.

Allen L. Donielson, U. S. Atty., James R. Rosenbaum, Asst. U. S. Atty., Des Moines, Iowa, for plaintiff.

Richard Santi, Daniel Cutler, William J. Koehn, Des Moines, Iowa, for defendant.

HANSON, Chief Judge.

The Court issues this order pursuant to cross-motions for summary judgment filed by the plaintiff and the defendant in this cause of action. The plaintiff's motion is for partial summary judgment and was filed on January 17, 1974. The plaintiff seeks summary judgment in its favor as it relates to two affirmative defenses which were set forth in the defendant's answer to the complaint, the statute of limitations and laches. The defendant's motion for summary judgment is based upon a failure to state a claim upon which relief can be granted and the statute of limitations. This Court has jurisdiction by virtue of Title 28, United States Code, Section 1345.

The United States of America alleges in its complaint that on or about March 28, 1966, December 4, 1967 and December 9, 1968 the United States of America, acting by and through the Farmers Home Administration, United States Department of Agriculture, made operating loans pursuant to the provisions of the Consolidated Farmers Home Administration Act of 1961, Title 7, United States Code, Section 1921 et seq., as amended, to Richard D. Varney and Irene H. Varney in the amounts of $29,620, $5,600 and $4,540. Attached to the complaint were copies of these notes marked as Exhibits A, B and C. The plaintiff alleges that the sums due and owing on these notes have not been paid and that there is a total indebtedness in a principal sum of $29,944.53. The plaintiff alleges that as security for these loans there was executed a security agreement on April 23, 1969 in favor of the plaintiff which was perfected by a Financing Statement filed on December 4, 1967 in the State of South Dakota. · The plaintiff claims that the security agreement covered property which

was sold and converted to its own use by the defendant in this cause of action. The plaintiff demands judgment against the defendant for the value of the secured property which was sold to and sold by the defendant.

The defendant sets out six affirmative defenses in its answer to the complaint. Several of these affirmative defenses are the subject of the two motions for summary judgment.

## I.

The Court first addresses itself to the plaintiff's motion for partial summary judgment filed January 17, 1974. This motion for summary judgment seeks summary judgment on the third and fourth defenses in the defendant's answer to the complaint. The third affirmative defense states that the right of action set forth in the complaint did not accrue within the applicable statutory limitation period of three years next before the commencement of this action. The alleged conversions occurred in December of 1969 and the complaint was filed by the plaintiff on September 27, 1973. There is no question but that the complaint was filed over three years past the date of the alleged conversion. The question, however, is whether the period of three years is the applicable period for measuring the statutory period of limitations.

Both parties agree that there is no genuine issue as to any material fact as it relates to that portion of the motion for summary judgment that deals with the statute of limitations. The defendant bases his statute of limitations defense upon Title 28, U.S.C., Section 2415(b) which provides a limitation period of three years for torts. This section of the United States Code, however, contains a six-year limitation period for an action for conversion of property of the United States. If the instant litigation involved a conversion, the six-year statute of limitation would apply; but if the action involved a tort and was not a conversion, the three-year statute of limitations would apply. The whole question of the statute of limitations turns upon whether the complaint states a cause of action for conversion of property of the United States.

The Court finds the defendant's arguments that the complaint does not allege any conversion of property of the United States to be without merit. The defendant is apparently arguing that conversion of a lien interest in property is not a conversion of property under Title 28, U.S.C. Section 2415(b). To support its argument that the Government had no property interest in the collateral, this portion of the security agreement is cited by the defendant:

> DEBTOR WARRANTS, COVENANTS, AND AGREES THAT . . . Debtor is the absolute and exclusive owner of the above-described collateral and any mark or brands used to describe livestock are the holding brand and carry the title. . . .

The defendant misinterprets the meaning of this clause in the security agreement. This clause merely means that prior to the execution of the security agreement there were no other outstanding interests in the collateral. It does not mean that the Government did not acquire an interest in the collateral and that the debtor was a sole and absolute owner of the collateral after the execution of the security agreement. The Government clearly has an interest in the property by the execution of the security agreement. It is equally clear that there can be a conversion of the Government's lien interest in the collateral. This Court holds that a lien interest in property is a property interest and a sale of the property disregarding that lien interest is a conversion of property of the lienholder.

A similar result was reached by Judge Scott in the case of United States v. Southland Provision Company, 320 F. Supp. 1089 (M.D.Fla.1970). In the *Southland* case Judge Scott held that within the meaning of Title 28, U.S.C.

Section 2415(b) a sale of hogs which had been mortgaged to the United States was a conversion of property of the United States and subjected that conversion to a six-year statute of limitation. This Court would reach the same result as reached by Judge Scott in the *Southland* case. This Court holds that under the undisputed facts of this case the six-year statute of limitations applies pursuant to Title 28, U.S.C., Section 2415(b), and that this cause of action is not barred by the statute of limitations. There is no dispute of material fact as to the period of time that has run on the statute of limitations, and thus this particular aspect of this cause of action is ripe for summary judgment.

Accordingly, it is ordered that that portion of the plaintiff's motion for partial summary judgment relating to the third affirmative defense of the defendant's answer is sustained. This cause of action is not barred by the statute of limitations.

The second portion of the plaintiff's motion for partial summary judgment pertains to the fourth affirmative defense of the defendant's answer which raises the defense that the plaintiff's cause of action is barred by the equitable doctrine of laches. The plaintiff claims that the defense of laches is not available against the United States. In support of this contention the United States cites the Court to United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1939); American Surety Co. of New York v. United States, 112 F.2d 903, 906 (10th Cir. 1940); and United States v. First National Bank of Prague, Oklahoma, 124 F.2d 484, 488 (10th Cir. 1941). The *Summerlin* case states as follows:

"It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights. United States v. Thompson, 98 U.S. 486 [25 L.Ed. 194]; United States v. Nashville, C. & St. L. Ry. Co., 118 U. S. 120, 125, 126 [6 S.Ct. 1006, 30 L.

Ed. 81]; Stanley v. Schwalby, 147 U. S. 508, 514, 515 [13 S.Ct. 418, 37 L. Ed. 259]; Guaranty Trust Co. v. United States, 304 U.S. 126, 132 [58 S.Ct. 785, 82 L.Ed. 1224]; Board of Commissioners v. United States, 308 U.S. 343, 351 [60 S.Ct. 285, 84 L.Ed. 313]. The same rule applies whether the United States brings its suit in its own courts or in a state court. Davis v. Corona Coal Co., 265 U.S. 219, 222, 223 [44 S.Ct. 552, 68 L.Ed. 987]." 310 U.S. at 416, 60 S.Ct. at 1020.

The defendant claims the general rule, that the United States is not subject to a defense of laches, is subject to exception which may be applicable to this litigation. The defendant contends that when the United States engaged in a proprietary function, the defense of laches is available against a claim of the United States. The theory is that when the Government enters into ordinary business outside of strictly Government matters, it must be held to the same rules that govern other parties in these transactions. The defendant has cited to the Court numerous and persuasive authorities for this exception to the rule that laches cannot be asserted against the United States. The Supreme Court stated in Cooke v. United States, 91 U.S. 389, 398, 23 L.Ed. 237:

Laches is not imputable to the Government, in its character as sovereign, by those subject to its dominion. * * * Still a Government may suffer loss through the negligence of its officers. If it comes down from its position of sovereignty, and enters the domain of commerce, it permits itself to the same laws that govern individuals there . . . Generally, in respect to all the commercial business of the Government, if an officer specially charged with the performance of any duty, and authorized to represent the Government in that behalf, neglects that duty, and loss ensues, the Government must bear the consequences of his neglect.

The Court cannot determine at this time whether the defense of laches is available to the defendant under the facts of this case. This determination must be made at a later stage in this litigation after evidence is heard concerning prejudice that might have been sustained by the defendant as a result of any delay caused by the Government. The Court would of course examine any authority that the plaintiff might present that would indicate that laches cannot be asserted where the Government is acting in a proprietary function, and as to whether the Government would be considered to be in a proprietary function under the facts of this case.

It is hereby ordered that that portion of the plaintiff's motion for summary judgment permitting the question of laches is overruled.

## II.

The defendant's motion for summary judgment sets forth four basic issues. The first two allege that the plaintiff's security interest was not properly perfected and thus was invalid. The third portion of the motion for summary judgment alleges that the Federal Packers and Stockyards Act, Title 7 U.S.C., Section 181 et seq., relieves the defendant of any liability for conversion. The fourth portion of the motion for summary judgment contends that the statute of limitations bars this cause of action by the plaintiff. This fourth issue has already been determined in the first portion of this order sustaining the plaintiff's motion for summary judgment.

In the Eighth Circuit, state law applies to determine priorities in a suit by the Federal Government to enforce a security interest. United States v. Union Livestock Sales Co., 298 F.2d 755 (4th Cir. 1962); United States v. Kramel, 234 F.2d 577 (8th Cir. 1956); United States v. E. W. Savage & Son, Inc., 343 F.Supp. 123 (D.S.D.1972), aff'd., 475 F.2d 305 (8th Cir. 1973). The Uniform Commercial Code under the law of the State of Iowa applies to determine the priority interests in this case.

The first argument of the defendant in its motion for summary judgment is that the plaintiff's security interest, even if perfected at the time of the defendant's purchase, became unperfected upon the failure of plaintiff to file a financing statement in the State of Iowa as required for continuing perfection of a security interest under Section 554.-9103(3) of the Code of Iowa. This section of the Iowa Code provides in part as follows:

> If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state.

The property that was secured to the Farmers Home Administration was subject to a perfected security interest in the State of South Dakota before being transported into the State of Iowa. The secured property came into the possession of the defendant within the four-month period provided for perfection of the security interest under the Uniform Commercial Code. The United States did not perfect the security interest in Iowa after the property had gone into the possession of the defendant either during the four-month period or at any time.

It is the contention of the plaintiff that it was not necessary to perfect the security interest within the four-month period in Iowa given that the sale occurred during a time when there was a perfected security interest (the four-month period). The plaintiff claims that since the transaction occurred within the four-month period, the rights of the plaintiff in that property are not prejudiced by the fact that following this transaction the United States did not file a financing statement in the State of Iowa. Contrary to this provision, the defendant argues that even though the property came into its hands within the four-month period and there

was a perfected security interest in the goods at the time, this interest would expire at the end of the four-month period if a financing statement were not filed. The defendant cites this language from one Uniform Commercial Code Text to support its contention:

> Thus, the creditor has four months from the time the goods crossed the state line to file a financing statement in the proper place at their new location. If he does so, his interest is continuously perfected, and he will maintain his relative priority. If he fails to perfect within the four-month period, he will become unperfected at the end of that time, and a later perfection will not relate back. The quoted provision of 9–103(3) presents but does not answer one puzzling lawyer question: If the creditor fails to perfect within the four-month period and some competing subordinate interest arises within that period, what is the relative priority of the interest after the four months? . . . .
>
> Comment 7 to 9–103 supports the conclusion that the rights are normally frozen when they arise within the four-month period and that at the expiration of the four-month period, the secured creditor who has failed to file in the second state will find himself subordinated to any who would have priority over an unprotected security interest. Thus, under our analysis, a buyer (who did not qualify under 9–307 and who, therefore, would be subordinate to a protected security interest) would hold a junior interest within the four-month period but that interest would mature into one superior to the secured creditor's interest if the secured creditor failed to perfect within the four-month period. J. White and R. Summers, Uniform Commercial Code. Pp. 848–49 (1972).

One commentator has also suggested that Section 9–103 of the Uniform Commercial Code dictates the same as above.

> Section 9–103 appears to leave the question open whether the holder of a perfected out-of-state security interest receives an absolute priority against the interest acquired during the first four-month period, or whether the failure to file locally causes his priority to be displaced. The official comment suggests that the out-of-state interest is less than absolute, at least as against persons acquiring a perfected security interest during the four-month period. The failure of the out-of-state lender to file locally is said to elevate a previously inferior perfected, security interest to a position of priority. No specific answer is given for interests acquired during the four months other than perfected security interest. However, it would seem that the failure to file, in essence, relates back, and the out-of-state interest is deemed unperfected from the time the property is removed to the Code state. Vernon, "Record Chattel Security Interest in the Conflict of Laws," 47 Iowa L.Rev. 346, 377–78 (1962).

As noted by the above two writers, Comment 7 to Section 554.9103 of the Iowa Code supports the contention of the defendant that at the expiration of the four-month period the secured creditor who has failed to file in second state will find himself subordinated to any who would have priority over an unperfected security interest. Comment 7 provides as follows:

> The four-month period is long enough for a secured party to discover in most cases that the collateral has been removed and to file in this state; thereafter, if he had not done so, his interest, although originally perfected in the state where it attached, is subject to defeat here by those persons who take priority over an unperfected security interest (See Section 9–301). Under Section 9–312(5), the holder of a perfected conflicting security interest is such a person even though during the four-month period the conflicting interest was junior. Compare the situation arising under Section 9–403(2) when a filing lapses.

As noted in Comment 7, the holder of a conflicting security interest during the four-month period will take precedence over the party with the senior security interest if that party does not file within the four-month period. The Court cannot reconcile how a buyer without notice of the security interest can be in a lesser position than the holder of a perfected conflicting security interest arising within the four-month period. At the end of this four-month period, if the person with the senior security interest does not file in the new state to perfect that security interest, the buyer without notice of the security interest should take precedence over that security interest consistent with Comment 7 noted above.

There is no case law in Iowa interpreting this particular provision of the Uniform Commercial Code. The only guide this Court has is the Uniform Commercial Code itself, the official comments to the Uniform Commercial Code, certain writings of some commentators, and a small number of cases which appear to reach a result contrary to that result suggested by Comment 7 to the Uniform Commercial Code. Even though the authority is conflicting, the Court feels that the official Comment 7 to the Uniform Commercial Code is persuasive authority in support of the defendant's position. The suggested 1972 amendments to the Uniform Commercial Code, Section 9–103, also support the interpretation given that section by the defendant. The proposed Section 9–103(1)(d)(i) states that if "action is not taken before the . . . end of four months after the collateral is brought into this state . . ., the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against the person who became a purchaser after removal."

The plaintiff cites numerous authorities to the contrary. Churchill Motors, Inc., v. A. C. Lohman, Inc., 16 A.D.2d 560, 229 N.Y.S.2d 570, 1962; The First National Bank of Bay Shore v. Stamper, 93 N.J.Super. 150, 225 A.2d 162 (1966); Al Maroone Ford, Inc., v. Manheim Auto Auction, Inc., 205 Pa.Super. 154, 208 A. 2d 290 (1965); Utah Farm Production Credit Association v. Dinner, 302 F. Supp. 897 (D.Colo.1969). These cases were also annotated in 30 A.L.R.3d 9, Section 37. The Court has reviewed these cases and finds that they do not give adequate consideration to official Comment 7 to the Uniform Commercial Code and its implications for interpreting the four-month rule.[1]

There is no material dispute as to the basic facts as it pertains to applying this section of the U.C.C. The plaintiff had a valid perfected security interest on the secured property in the State of South Dakota. When this collateral was moved to Iowa, it was sold within the four-month period in which the perfected security interest from South Dakota would be valid in Iowa. At no time during or after this four-month period did the plaintiff properly perfect that security interest in Iowa. This Court holds that a party who asserts a security interest perfected in another state but who does not file and perfect his interest in Iowa within a four-month period after the goods are transported to this state has a junior interest to the buyer for value who has no knowledge or notice of the security interest *after* the lapse of four months without perfection of the security interest in Iowa.

The basic purpose of 9–103(3) is to allow the secured creditor a period of time to locate the collateral after it has been transported to another state. The period of time is four months. The affidavit appended as Exhibit A to the defendant's motion for summary judgment asserts that the defendant had no knowledge of any security interest held by any person or entity. The plaintiff does not

---

1. This Court is highly cognizant of the authority subscribing to the plaintiff's view. Careful analysis and construction of the Commercial Code lead this Court to believe that the sounder view would be guided by the teachings of the Comment.

dispute that the defendant had no knowledge of the security interest of the plaintiff. Therefore, there is no material dispute of fact to prevent the issuance of summary judgment for the defendant upon this point and the Court so rules.

The second portion of the defendant's motion for summary judgment asserts a similar argument as it relates to the lapsing of the plaintiff's financing statement in December of 1972. The defendant argues that in accordance with Section 554.9403, that upon the lapse of the financing statement the security interest becomes unperfected and is inferior to junior interests in the collateral during the period of the filing.

The Comment 3 to Section 9–403 of the Uniform Commercial Code supports the position of the defendant by analogy, or Comment 7 supported the defendant's position on Section 9–103(3), although it does refer to the holder of a perfected conflicting interest security interest. Comment 3 reads as follows:

> Under the fourth sentence of subsection (2), the security interest becomes unperfected when filing lapses. Thereafter, the interest of the secured party is subject to defeat by those persons who take priority over an unperfected security interest (See Section 9–301), and under Section 9–312(5) the holder of a perfected conflicting security interest is such a person even though before lapse the conflicting interest was junior.

Again the Court can see no justification to hold a buyer without knowledge or notice of a secured interest in a different position than the holder of a perfected conflicting security interest. This buyer would gain a superior interest over the expired security interest at the expiration of the filing of the financing statement.

There is, however, a controversy or issue of material fact in this case as to the knowledge of the defendant at the time the financing statement expired and was not continued. Although the Court would hold for the defendant as it

related to the legal issues, it may be that the Court cannot hold for the defendant as it relates to the finding of whether the defendant was a buyer without notice *at the time* of the expiration of the financing statement.

The third issue raised by the defendant is that the Federal Packers and Stockyards Act, Title 7, U.S.C., Section 181 et seq. relieves the defendant of any liability for conversion. The contention of the defendant is that since the Packers and Stockyards Act deprives the defendant of a degree of choice as to who they serve and forces them to serve all without difference or discrimination, the defendant should not be held liable for accepting livestock which are subject to a security interest. Although it is not necessary for the determination of this case to decide this point, this Court would agree with the Iowa Supreme Court in Birmingham v. Rice Bros., 238 Iowa 410, 26 N.W.2d 39, 2 A.L.R.2d 1108 (1947). In that case the reliance on the Packers and Stockyards Act to absolve the defendant of liability was rejected. This Court cannot believe that the Packers and Stockyards Act was intended to absolve or shield purchasers or market agencies from liability on account of wrongful sales in the stockyards of livestock not owned by the consignors or covered by security interests. This is in accord with the holding of the Ninth Circuit in United States v. Matthews, 244 F.2d 626, 631 (1957), and First National Bank of Pipestone v. Siman, 67 S.D. 118, 289 N.W. 416 (1939); Farmers State Bank v. W. M. Stewart, 454 S. W.2d 908 (Mo.1970). *But see,* Sullivan Co. v. Wells, 89 F.Supp. 317 (D.Neb. 1950).

The final issue raised by the defendant's motion for summary judgment contends that the statutory limitation period has run on this cause of action. This issue has already been determined adversely to the defendant earlier in this memorandum.

In accordance with the foregoing memorandum and noting that no material issue of fact exists to prevent the is-

suance of summary judgment as it relates to Section I(A) of the defendant's motion for summary judgment, it is hereby ordered that the defendant's motion for summary judgment as it relates to the issue raised in Section I(A) is sustained. It is further ordered that the complaint be dismissed.