In re Lexie WILLIAMS, Jr., Mary Jean Williams, Debtors.

UNITED STATES of America, Plaintiff,

v.

Lexie WILLIAMS, Jr., Mary Jean Williams, National Bank of Commerce of Mississippi, Defendant.

Bankruptcy No. 86–01160–BRC–EAS. Adv. No. 86–0181.

United States Bankruptcy Court, N.D. Mississippi.

Jan. 13, 1988.

Patricia D. Rogers, Asst. U.S. Atty., Oxford, Miss., for U.S.

Jeffery M. Navarro, Navarro, Mills and Davis, Aberdeen, Miss., for Lexie Williams, Jr. and Mary Jean Williams.

Ralph E. Pogue, Aberdeen, Miss., for Nat. Bank of Commerce of Mississippi.

## MEMORANDUM OPINION AND ORDER

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration of the motion for summary judgment filed by the plaintiff, United States of America, acting for and on behalf of the Farmers Home Administration; response to said motion having been filed by National Bank of Commerce of Mississippi; and the Court having heard and considered same hereby finds, orders and adjudicates as follows, to-wit:

### I.

The Court has jurisdiction of the parties to and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(K).

### II.

This case concerns competing liens encumbering a 1979 John Deere 4640 tractor. On March 5, 1979, Lexie Williams, Jr., hereinafter referred to as Williams or debtor, purchased the tractor from Greenline Tractor Company in Columbus, Mississippi, with funds borrowed from National Bank of Commerce of Mississippi, hereinafter referred to as NBC. Three days later, the bank perfected its security interest by filing a financing statement with the Chancery Clerk of Monroe County, Mississippi, and with the Mississippi Secretary of State.

The Farmers Home Administration, hereinafter referred to as FmHA, obtained a second lien on the tractor as security for a 1982 loan. Williams was an ongoing FmHA borrower from 1979 to 1985. Loans made to Williams during this period were secured by real estate deeds of trust, as well as, security agreements perfected by filed financing statements, encumbering Williams' crops and equipment. A financing statement filed by FmHA on March 10, 1982 applies to the tractor in question.

On March 9, 1984 the five year effective life of the 1979 NBC financing statement expired. The bank failed to file a continuation statement within six months before the date of lapse.

Williams defaulted on the purchase money loan advanced by NBC. On August 6, 1986, the bank repossessed and sold the tractor to Kenneth Bell of Sikeston, Missouri, for $10,500.00. Of the $10,500.00

sales price, NBC retained $8,343.24 in satisfaction of its note, then forwarded the remaining $2,156.76 to FmHA. FmHA, contending that its lien position was superior, made repeated demands upon the bank and the purchaser of the tractor for payment of the entire sales price.

On August 14, 1986, Williams and his wife filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. FmHA initiated an adversary proceeding in the case by filing its complaint to determine the priority of the competing liens on December 11, 1986. As of October 10, 1986, the balance owing on the Williams' indebtedness to FmHA was $352,374.32 in unpaid principal, and $61,272.05 in unpaid interest. FmHA's complaint requests a finding that its lien is superior to the bank's and demands judgment from the bank for the sum of $8,343.24, the amount retained by NBC.

### III.

The law applicable to the issue raised in this motion may be found in the Uniform Commercial Code sections of the Mississippi Code Annotated (1972). Proper resolution of this dispute requires a careful and ordered tracking of several successive Code sections. The sections of the Mississippi Uniform Commercial Code pertaining to this case, and their relevance to the issue in dispute, are as follows:

§ 75-9-107. Definitions: "purchase money security interest".

A security interest is a "purchase money security interest" to the extent that it is

(a) taken or retained by the seller of the collateral to secure all or part of its price; or

(b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used.

■ Section (b) applies herein. It is undisputed by the parties that the bank gave value to Williams, and that the value was used by Williams to purchase a tractor. The bank clearly had, at one time, a purchase money security interest in the tractor. However, the priority status of this interest can change depending on subsequent events.

§ 75-9-312. Priorities among conflicting security interests in the same collateral.

.    .    .    .    .

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within twenty (20) days thereafter.

■ The import of this section is that proper perfection is required to give teeth to a purchase money security interest. The method for perfecting a security interest in a farm tractor is specified by the Code.

§ 75-9-302. When filing is required to perfect security interest; security interests to which filing provisions of this chapter do not apply.    .

(1) A financing statement must be filed to perfect all security interests except the following:

.    .    .    .    .

(d) a purchase money security interest *in consumer goods.* (emphasis added)

The only exception to the filing requirement, where the debtor retains possession, is the purchase money interest in consumer goods. "Consumer goods" is defined at § 75-9-109(1) as goods "used or bought for use primarily for personal, family or household purposes." The tractor at issue in this case is obviously not a consumer good but a piece of farming equipment.

The term "equipment" is defined at § 75-9-109(2) as goods "used or bought for use primarily in business (including farming or a profession)." A proper filing is required to perfect a non-possessory security interest in equipment. *In re Merts Equipment Co.*, 438 F.Supp. 295 (M.D.Ga., 1977); *Streveall–Paterson Finance Co. v. May*, 77 N.M. 331, 422 P.2d 366 (1967); *In re Gross*, 6 UCCRS 265 (Bankr. BCED

Tenn.1969). The exemption from filing a purchase money security interest in farm equipment acquired for less than $2,500.00, found in the 1962 Uniform Commercial Code, was deleted from the current version, adopted in 1972. Today, a security interest in farm equipment must be perfected in the same manner as any other collateral. 9 Anderson on the Uniform Commercial Code, § 9–302:30 (3rd ed. 1985).

■ The focus must now shift to the consequences of a failure to renew the original proper filing.

§ 75–9–403. What constitutes filing; duration of filing; effect of lapsed filing; duties of filing of officer.

(2) ... [A] filed financing statement is effective for a period of five (5) years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse.... Upon lapse, the security interest becomes unperfected unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.

The effect of a lapsed financing statement on a purchase money security interest in farm equipment appears to be a question of first impression. The preceding analysis has shown that a purchase money security interest in non-consumer goods must be perfected by filing within twenty days of the debtor's gaining possession of the collateral in order to be valid. Logic dictates that the filing must be kept current through the subsequent filing of a continuation statement. This is not a case where automatic perfection of a security interest can occur. If it were, the initial filing would have been a mere rubber stamp and its lapse therefore would be irrelevant. Lapse of a filing relegates the creditor to the standing of an unperfected secured creditor. *Frank v. James Talcott, Inc.*, 692 F.2d 734 (11th Cir.1982); *General Electric Credit Corp. v. Isaacs*, 90 Wash.

2d 234, 581 P.2d 1032 (1978); *Morse Electro Products Corp. v. Beneficial Industrial Loan Co.*, 90 Wash.2d 195, 579 P.2d 1341 (1978).

In its brief, NBC cites *United States v. Squires*, 378 F.Supp. 798 (S.D.Iowa 1974) for the proposition that a secondary secured party does not take priority over a primary secured party, after lapse of the first lienholder's financing statement, if the secondary lienholder has actual knowledge of the primary security interest. NBC contends that since FmHA had actual knowledge of the bank's security interest, FmHA cannot take priority regardless of the lapse of perfection.

The *Squires* case can be distinguished on its facts and has no bearing whatsoever on the case presently before this Court. *Squires* construed § 9–103 of the Iowa Uniform Commercial Code which deals with the failure to re-file a financing statement when goods are moved from one state into another. The holding in *Squires* is noted as follows:

This Court holds that a party who asserts a security interest perfected in another state but who does not file and perfect his interest in Iowa within a four-month period after the goods are transported to this state has a junior interest to the buyer for value who has no knowledge or notice of the security interest *after* the lapse of four months without perfection of the security interest in Iowa.

*Squires*, 378 F.Supp. at 804.

Unlike the Code section addressed in *Squires*, the section of the Uniform Commercial Code dealing with the effect of a lapsed filing (i.e. § 9–403) does not refer to "knowledge". The Code and case law construing it are unequivocal. When a security interest becomes unperfected upon lapse, it is deemed to be unperfected as against a person who became a lien creditor before lapse, notwithstanding knowledge by the junior lien creditor of the prior security interest. *See, Growth Properties v. Lempert*, 144 Cal.App.3d 983, 193 Cal. Rptr. 102, 36 UCCRS 744 (1983) ("The knowledge of the purchaser is irrelevant to

a determination of priorities under section 9–403."); *State Sav. Bank v. Onawa State Bank*, 368 N.W.2d 161, 40 UCCRS 1906 (Iowa 1985) (Rehearing denied June 24, 1985) ("Subsection [9–403(2)] provides in plain terms that the security interest becomes unperfected upon lapse"); *Davis v. Ford Motor Co.*, 14 Ohio App.3d 39, 469 N.E.2d 1022 (1984). ("The plain language of the statute dictates that because appellants failed to file a continuation statement ... their security interest became unperfected on that date ... even though appellee became a purchaser of the collateral before lapse.")

In addition, defendant's brief cites *Weiss, Dreyfous & Seiferth v. Natchez Inv. Co., Inc.*, 166 Miss. 253, 140 So. 736 (1932), for the proposition that a "purchase money lien on personal property creates such from the time of sale while it remains in the buyer's hands or in one deriving title or possession through him with notice." Defendant's brief p. 4. The legal analysis in *Weiss* is now inapplicable. The Mississippi statute which the case interprets, § 2239 of the 1930 Code, was brought forward in the 1942 Code but was repealed in 1966 (Ch. 316). Subsequently, Mississippi adopted the Uniform Commercial Code which became effective on March 31, 1966.

## IV.

In order to determine the priority ranking of the now reshuffled competing interests, one must look to § 75–9–301 of the Mississippi Code. "When there is a failure to perfect the purchase money security interest, the purchase money creditor is merely the holder of an unperfected security interest and his status is then governed by UCC § 9–301". 9 Anderson on the Uniform Commercial Code, § 9–312:54 (3rd Ed. 1985).

The Mississippi counter part of § 9–301 is, in part, as follows:

§ 75–9–301. Persons who take priority over unperfected security interests; right of "lien creditor".

(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of:

(a) Persons entitled to priority under Section 75–9–312;

(b) A person who becomes a lien creditor before the security interest is perfected;

Subsection (b) of § 75–9–301(1) applies to FmHA and permits its lien to enjoy priority over the security interest of the bank. Lapse of the NBC filing elevated FmHA to a priority position and relegated the bank to an unperfected status.

■ Furthermore, any argument by the bank that under § 75–9–305 it re-perfected its purchase money lien upon repossession of the collateral is defeated by the twenty day perfection requirement of § 75–9–312(4). The Court recognizes that repossession constitutes perfection by possession even though the creditor may have been unperfected before debtor's default. *Raleigh Industries of America, Inc. v. Tassone*, 74 Cal.App.3d 692, 141 Cal.Rptr. 641, 22 UCCRS 1235 (2d Dist.1977). Nevertheless, if the bank is deemed to have become perfected upon repossession, it does not regain purchase money status because perfection occurred more than twenty days subsequent to the debtor's initial purchase and/or possession of the tractor. Repossession by the bank took place four years after FmHA filed its lien. Even though repossession may re-perfect the bank's interest, the lien is not a purchase money security interest and is still inferior to FmHA's lien because of the timeliness of the perfection.

## V.

■ The Court recognizes that when proceeds of a sale initiated by a secured creditor are not sufficient to satisfy in full the lien of the priority secured creditor, that priority creditor retains the entire sum realized as a result of the sale. *General Electric Co. v. Hol–Gar Mfg. Corp.* 431 F.Supp. 881 (E.D.Pa.1977) *aff'd* 573 F.2d 1301 (3rd Cir.1978). Either way the bank's interest is viewed, as unperfected by lapse of the financing statement or as re-perfected by repossession, its security interest by

operation of law is subordinate to that held by FmHA.

The Court, realizing that its holding will have a harsh impact on NBC, cites the following passage:

> Although strict adherence to the Code requirements may at times lead to harsh results, efforts by courts to fashion equitable solutions for mitigation of hardships experienced by creditors in the literal application of statutory filing requirements may have the undesirable effect of reducing the degree of reliance the market should be able to place on the Code provisions. The inevitable harm doubtless would be more serious to commerce than the occasional harshness from strict obedience.

*Security National Bank & Trust Co. v. Dentsply Professional Plan,* 617 P.2d 1340, 1343 (Okla.1980).

## VI.

As a result of the above and foregoing reasoning, this Court is of the opinion that no issue of material fact exists in this proceeding and that FmHA is entitled to judgment as a matter of law.

It Is, Therefore, Ordered and Adjudged that FmHA's motion for summary judgment is hereby sustained in that its lien is superior to the security interest of NBC. Additionally, FmHA is awarded judgment against NBC in the sum of $8,343.24, representing the balance of the proceeds from the sale of the collateral, plus interest accruing at the contract rate after the date of sale. Post-judgment interest shall likewise accrue at the contract rate. Execution for all of which shall issue according to law.