[No. 44574.   En Banc.   September 1, 1977.]

ASSOCIATES REALTY CREDIT LIMITED, ET AL, *Appellants,*
v. CHARLES HENRY BRUNE, ET AL,
*Respondents.*

*Lauren W. Dobbs* (of *Dobbs & Van Diest*), for appellants.

*Howard W. Elofson* (of *Elofson, Vincent, Hurst & Crossland*), for respondents.

ROSELLINI, J.—In this action to foreclose a chattel mortgage on a mobile home, the respondent, Rainier Credit Co. (Rainier), was permitted to intervene and seek foreclosure of its security interest in the home. The Kittitas County Superior Court granted judgment in favor of both creditors. It ruled, however, that Rainier had a first and paramount lien on the mobile home.

The court ordered the property sold and the proceeds of the sale paid into court. It further ruled that, before the appellant, Associates Realty Credit Limited, could satisfy any part of its judgment out of the proceeds, it must

account for the sale of real property in British Columbia upon which it holds a second mortgage to secure the same obligation.

The trial court's findings are accepted by the appellant. They show that the appellant holds its mortgage as assignee of the party which financed the purchase of the mobile home in British Columbia; that the appellant's security interest in the home was perfected by filing in accordance with the law of British Columbia; that British Columbia does not issue certificates of title to mobile homes; that the debtors breached the mortgage agreement by taking the home out of British Columbia without the knowledge or consent of the appellant; and that the amount due and owing is $24,874.07.

The findings show that shortly after bringing the mobile home to Washington, the debtors secured a certificate of title and falsely represented to the Department of Motor Vehicles that they owned the vehicle free and clear of any liens or security interest. Using the certificate of title issued in this state, the debtors obtained a loan from Rainier pledging the mobile home as security. The security interest of Rainier was perfected in accordance with the laws of the State of Washington. The balance found to be due at the time of trial was $6,499.32 plus interest and attorney fees.

The findings show that the appellant, as further security for its loan, has a second mortgage on certain real property located in British Columbia. The first mortgage is held by a bank, and a holder of a third mortgage has instituted foreclosure proceedings. The appellant is in a position to foreclose its mortgage.

Rainier's loan was made to the debtors within 4 months after the mobile home was brought to Washington, and this action was commenced by the appellant within that 4–month period.

The case was apparently heard below upon the theory

that RCW 62A.9–103(3) and (4)[1] are the governing statutory provisions. However, the respondent cites a provision of the motor vehicle code, RCW 46.12.095(3),[2] which is also applicable. As we read these statutes, they are in harmony. The provisions of RCW 62A.9–103(3) and (4), which were

[1]RCW 62A.9–103(3) and (4) provide:

"(3) If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. However, if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within thirty days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state. If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. . . .

"(4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

[2]RCW 46.12.095 provides:

"A security interest in a vehicle other than one held as inventory by a manufacturer or a dealer and for which a certificate of ownership is required is perfected only by compliance with the requirements of this section:

". . .

"(3) If a vehicle is subject to a security interest when brought into this state, perfection of the security interest is determined by the law of the jurisdiction where the vehicle was when the security interest was attached, subject to the following:

"(a) If the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest was attached, the following rules apply:

"(b) If the name of the secured party is shown on the existing certificate of ownership issued by that jurisdiction, the security interest continues perfected in this state. The name of the secured party shall be shown on the certificate of ownership issued for the vehicle by this state. The security interest continues perfected in this state upon the issuance of such ownership certificate.

"(c) If the security interest was not perfected under the law of the jurisdiction where the vehicle was when the security interest was attached, it may be perfected in this state; in that case, perfection dates from the time of perfection in this state."

The section applies to mobile homes. RCW 46.04.670; RCW 46.12.105.

adopted from the American Law Institute's Uniform Commercial Code as it existed in 1965 (*see* 3 U.L.A. §§ 9–103(3) and 9–103(4) (West 1968)), have been subject to judicial interpretation, whereas RCW 46.12.095(3) does not appear to have been before an appellate court. Therefore, our discussion will focus upon the Uniform Commercial Code (UCC) §§ 9–103(3) and 9–103(4).

In summary, RCW 62A.9–103(3) provides that if personal property already subject to a perfected security interest is brought into this state, without a prior understanding of the parties that it would be kept in this state, the security interest remains perfected for a period of 4 months after the property is brought here, without any further action on the part of the secured party. Under RCW 62A.9–103(4),

> if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.

■ There lurks in the language of subsection (4) an ambiguity which has resulted in litigation in a number of states which have adopted the code. Does the subsection apply to all security interests, or only to those which attach after the certificate is issued? If it was meant to apply to all such interests, there is no way in which a person in the appellant's position can protect himself. It would seem that if the draftsmen and the legislature had intended such a harsh result, the intent would have been more clearly expressed.

As indicated in *Automobiles: Priorities as Between Vendor's Lien and Subsequent Title or Security Interest Obtained in Another State to Which Vehicle was Removed,* Annot., 42 A.L.R.3d 1168 (1972), the majority of courts which have considered the question have concluded that the UCC provision has reference to security interests which attach after the title certificate is issued. Cases holding that if a security interest is perfected under the law of

the jurisdiction in which it attaches, its priority cannot be defeated by the unauthorized securing of a title certificate in another jurisdiction, include *First Nat'l Bank v. Stamper,* 93 N.J. Super. 150, 225 A.2d 162 (1966) (the leading case); *Community Credit Co. v. Gillham,* 191 Neb. 198, 214 N.W.2d 384 (1974); *General Motors Acceptance Corp. v. Long–Lewis Hardware Co.,* 54 Ala. App. 188, 306 So. 2d 277 (Ala. Civ. App. 1974). *See also Churchill Motors, Inc. v. A.C. Lohman, Inc.,* 16 App. Div. 2d 560, 229 N.Y.S.2d 570 (1962) (dictum). The minority view is expressed in *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.,* 465 S.W.2d 933, 42 A.L.R.3d 1158 (Tex. 1971).

The courts which have adopted the majority view have been persuaded by the explanatory comment of the editorial board of the UCC, which stated:

> Subsection (4) is new to avoid the possible necessity of duplicating perfection in the case of vehicles subject to a certificate of title law requiring compliance therewith to perfect security interests. The certificate of title law requirements are adopted as the test for perfection.

ALI National Conference of Commissioners on Uniform State Laws, *1956 Recommendations of the Editorial Board for the Uniform Commercial Code,* Comment, § 9–103 (1957).

If the provision is viewed in this light, it becomes clear that it has reference to security interests which attach at the time of or after the issuance of the certificate. Where, as here, the law of the jurisdiction in which the interest attached did not provide for certificates of title, none would be necessary in order to perfect the security interest and to preserve it during the 4–month period.

These courts have also been concerned with the need for uniformity in construing the statute, which is itself designed to promote uniformity in the law governing commercial transactions.

Another consideration which cannot be overlooked is that a rule which would permit a purchaser or debtor to defeat

his creditor's right by securing a certificate of title in another jurisdiction would invite fraud. In *General Motors Acceptance Corp. v. Long–Lewis Hardware Co., supra* at 193 (Wright, P.J., concurring specially), after noting that the purpose of section 9–103(4) is merely to provide a method of perfecting a security interest other than by filing, as contemplated by section 9–103(3), said:

It certainly was not intended to provide a loophole through which swindlers could pass and defeat a security interest legally perfected where it attached. If such were the case, security interests perfected in states requiring certificates of title, and which states provided for perfection by entry on the certificate, could be defeated by the securing of a fraudulent clean certificate in another state.

The Texas court, in *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co., supra,* which was decided without a justifying rationale, and without consideration of its impact, and also a number of bankruptcy referees have construed the section to defeat the prior perfected security interest. *See* 4 R. Anderson, *Anderson on the Uniform Commercial Code* § 9–103:23 (2d ed. 1971), and 42 A.L.R.3d 1180, 1189 (1972).

In this jurisdiction, the Court of Appeals has decided a case in point. *Morris v. Seattle–First Nat'l Bank,* 10 Wn. App. 129, 516 P.2d 1055 (1973). The court decided, without reference to RCW 62A.9–103(4) and relying entirely on RCW 62A.9–103(3), that a Texas financing bank was entitled to repossess an automobile in Washington, in the hands of a purchaser for value who relied upon a Washington certificate of title showing no lienholder. In that case, a Texas certificate of title had been obtained in the first instance. The bank had given the debtor permission to take the vehicle to New York and obtain New York license plates, provided its security interest was not disturbed. The automobile was repossessed by the Texas bank's agent within 4 months after it was brought to Washington. The sale to the Washington purchaser was

also made within that 4–month period. A concurring opinion by Callow, J., discussed some of the opposing authorities with respect to the applicability of RCW 62A.9–103(4) and concluded that the majority rule properly required the result reached by the court, even though the buyer relied upon a Washington certificate of title.

We find the factors which have influenced the courts which follow the majority view to be persuasive and are convinced that theirs is the interpretation which we should adopt.

It may be argued that the statute, as thus interpreted, permits a person in possession of personal property to defraud an innocent purchaser. But it must be kept in mind that the legislature, in adopting the UCC, sought to strike a balance between the interests of the prior lienholder and those of a subsequent good–faith purchaser or creditor. In order to afford the party having the prior interest some protection, he is given a period of 4 months in which to perfect his interest in this state. After that his priority is lost until he perfects the interest. If this protection is given, a burden must necessarily fall upon a prospective purchaser or encumbrancer to make sure that the property has been located in this state for more than 4 months. It was evidently the legislative thought that this is not an unconscionable burden.[3]

---

[3]It is of interest that, in 1972, the National Conference of Commissioners on Uniform State Laws, no doubt noting the problems that have arisen in interpreting section 9–103(4), proposed a revision. It has not been adopted by our legislature. The proposed change modifies the majority rule in only one respect: If no certificate of title was issued in the jurisdiction where the security interest attached, and the chattel is brought into a title state, where a certificate of title is procured which does not show the security interest, the security interest is made subordinate to that of a nonprofessional purchaser for value, without notice, who takes actual possession of the chattel. A "professional" purchaser includes a professional lender, such as the respondent in this case. (*See* 3 U.L.A. §§ 9–103(3) and 9–103(4) (West Supp. 1977).)

Thus, even under the proposed revision, the security interest of the appellant would not be defeated by the issuance, in this state, of a certificate of title which did not reflect that interest.

■ RCW 46.12.095(3), which the respondent cites but does not attempt to analyze, would appear to be in harmony with RCW 62A.9–103(3) and (4), as thus interpreted. RCW 46.12.095(3) makes the question of perfection depend on the law of the jurisdiction in which the security interest attaches. It provides a special rule where a certificate of title is in existence when the vehicle is brought into the state. In such a case, a security interest shown on the certificate continues indefinitely (rather than for 4 months, as in RCW 62A.9–103(3)) and is to be shown on any certificate issued by this state. RCW 46.12.095(3) does not provide a date when the perfection of a security interest is lost, where there is no certificate of title when the vehicle is brought into the state (as is the case here), and it would appear that resort must be had to RCW 62A.9–103(3) to find the answer to that question. This was the course taken by the Court of Appeals in *Morris v. Seattle–First Nat'l Bank, supra.*

■ The Superior Court erred in awarding priority to the lien of the respondent, Rainier. The question remains whether it also erred in requiring the appellant to first exhaust its Canadian security before resorting to the proceeds of the sale of the personal property located in this state. This ruling was evidently intended to conform to the equitable practice of marshaling the senior lienor's securities, often termed "assets." That practice is designed, not to protect the debtor's interests, but rather those of the junior lienor, by requiring the senior lienor to exhaust other securities readily available to him before resorting to a fund which is the junior lienor's only security. 2 J. Story, *Commentaries on Equity Jurisprudence* 230 *et seq.* (14th ed. 1918); 55 C.J.S. *Marshaling Assets and Securities* 955 (1948); 53 Am. Jur. 2d *Marshaling Assets* § 1 (1970). This court recognizes the doctrine. *Shoemaker v. White–Dulaney Co.,* 131 Wash. 347, 230 P. 162 (1924); *Johnson v. Wilson,* 145 Wash. 515, 261 P. 102 (1927); *Edward L. Eyre & Co. v. Hirsch,* 36 Wn.2d 439, 218 P.2d 888 (1950).

These authorities show that the creditor asking for marshaling must show that the senior creditor will not be burdened by the order, that the other asset is readily available to him and can be reduced to money without initiating litigation, and that rights of other creditors will not be prejudiced. The appellant here does not claim that participating in the foreclosure suit in British Columbia is unduly onerous, but it does complain of the delay in collection imposed on it.

Also, in oral argument, we were told that the Canadian security may not prove adequate to cover the lien of the first mortgage, much less that of the second and third mortgages. We note that the Superior Court made no finding that the interest of the third mortgagee would not be prejudiced by its order requiring the appellant to attempt to satisfy its loan out of the proceeds of the Canadian foreclosure.

While we cannot sustain the Superior Court's theory that a junior lienor, like a senior lienor, can be required to marshal his securities, we recognize that the doctrine does have applicability in the present posture of the case. Since we have determined that the appellant is the senior lienor, we think it equitable to give the junior lienor some hope of recovering at least a portion of its loan from the proceeds of the sale. We have been assured that the third mortgagee in Canada has virtually no chance of recovering any of the proceeds of the foreclosure sale in that jurisdiction. Therefore, we feel safe in assuming that rights of that third party will not be prejudiced if we require the appellant to attempt to recover a part of its loan from those proceeds.[4]

Accordingly, it is ordered that there be set aside out of the proceeds of the sale of the mobile home, an amount which is sufficient to pay Rainier's judgment. The balance shall be paid to the appellant, assuming that it is no more

---

[4]A mortgagee who resides in another state can be required to exhaust his collateral in that state before resorting to a fund in the forum state, in order to protect the interest of a junior lienor. *Willey v. St. Charles Hotel Co.*, 52 La. Ann. 1581, 28 So. 182 (1900).

16

than the amount of its judgment. In the event the balance is less than the amount of the judgment, the appellant may again resort to the proceeds of the sale if and after it is determined that the funds available to the appellant in the Canadian foreclosure are inadequate to complete payment of its judgment. The balance of the proceeds, if any, after payment of the appellant's judgment, shall be paid to Rainier to the extent of its judgment.

Except for this modification, the judgment is reversed.

WRIGHT, C.J., and HAMILTON, STAFFORD, UTTER, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.