IAC, LTD., PLAINTIFF-APPELLANT, v.
PRINCETON PORSCHE-AUDI, DEFENDANT-RESPONDENT.

Argued December 12, 1977—Decided February 9, 1978.

*Mr. James S. Rothschild, Jr.* argued the cause for appellant (*Messrs. Riker, Danzig, Scherer and Debevoise,* attorneys; *Mr. Rothschild,* of counsel; *Mr. Dennis J. O'Grady,* on the brief).

*Mr. Donald R. Bryant, Jr.* argued the cause for respondent (*Mr. Gordon C. Strauss,* of counsel; *Mr. Walter A. DeAngelo,* on the brief).

The opinion of the Court was delivered by

PASHMAN, J. The only question before the Court is whether the interest of a holder of a valid foreign lien remains superior to that of an innocent purchaser of the encumbered goods where the buyer is a dealer with respect to the goods and the purchase takes place within four months of the transfer of the property to New Jersey. Simply put, the issue is one of straightforward statutory construction involving *N. J. S. A.* 12A:9–103(3) and (4).

On August 2, 1976 Charles Ryan applied to IAC, Ltd., a Canadian corporation, to finance his purchase of a new Porsche automobile from Auto Hamer, Inc., a registered Porsche dealer located in Quebec, Canada. Ryan made a down payment of $5,700 and received financing for the purchase from IAC in the amount of $10,000. Later that day Auto Hamer was tendered the full purchase price and Ryan received his car.

Ryan had executed a conditional sales agreement with Auto Hamer in which title of the vehicle remained in the vendor until payment of the $10,000 loan principal and a $2,470.26 finance charge. The agreement further provided for an immediate assignment of the contract, title and all rights of the vendor to IAC. This contract fully complied with the applicable requirements of the Canadian Consumer Protection Act. According to the Appellate Division, "it is not disputed that . . . the security interest of plaintiff was perfected in Canada and that plaintiff thereby obtained a valid lien on the automobile under the law of Canada." 147 *N. J. Super.* 212, 215 (App. Div. 1977).

At some point between August 2 and August 6, 1976, Ryan acquired a certificate of registration in Quebec. This document did not require disclosure of the IAC security interest and no notation of the existence of the lien appeared

on its face. Ryan then drove the vehicle to Trenton, New Jersey, where he changed the Canadian registration to one in New Jersey and acquired a certificate of title from the Division of Motor Vehicles. The New Jersey certificate of title requires disclosure of any encumbrances on the vehicle. Nevertheless, as a result of Ryan's false representation that there were no such liens, he was issued a "clean" certificate of title.

On August 6, 1976 Ryan sold the car to defendant Princeton Porsche-Audi, a good faith purchaser without knowledge of the security interest, for $9,000. The vehicle had some 610 total miles on its odometer. Princeton Porsche-Audi would normally have paid $10,500 for a comparable vehicle in the wholesale market.

It is undisputed that at some point thereafter Princeton Porsche-Audi became aware of the lien. The exact time is contested, as is an alleged promise by defendant not to resell the auto. However, these factual disputes and the good faith of Princeton Porsche-Audi were disposed of by stipulation of the parties in order to permit summary disposition of the case.[1] At any rate, an attempted sale to a Pennsylvania dealer fell through when the buyer received notice of the lien. Defendant then sold the automobile to a customer of its own.

Plaintiff abandoned any effort to regain possession of the automobile through replevin, and sought damages for conversion. IAC's motion for summary judgment on the issue of defendant's liability was granted. The Appellate Division reversed the grant of summary judgment. 147 *N. J.*

[1] The attorney for IAC stipulated that defendant ". . . acted in absolute, perfect good faith, he saw what appeared to be a perfectly valid New Jersey registration." The plaintiff summed up the other facts necessary for summary judgment as follows: (1) on August 2 the car was sold to the thief, (2) he executed a conditional sales agreement with IAC, (3) on August 6 he came to New Jersey and sold the car to defendant. None of these assertions was challenged by defendant.

*Super.* 212. We granted certification to consider this trouble-some issue under the Uniform Commercial Code (U. C. C.) which has spawned inconsistent results across the country. 74 *N. J.* 277 (1977).

Resolution of this dispute turns on our interpretation of the applicable conflict of laws rule of the U.C.C., codified in *N. J. S. A.* 12A:9–103(3) and the scope of the section which serves as an exception to that rule, *N. J. S. A.* 12A:9–103(4). These statutes provide, in pertinent part, as follows:

*N. J. S. A.* 12A:9–103:

(3) If personal property * * * is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. * * * If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. * * *

(4) * * * [I]f personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.

The first section represents a compromise between the harsh common law rule under which a good faith purchaser would always lose against the claim of the secured party, and the equally undesirable rule which would permit such a purchaser to always prevail, with the consequent encouragement of fraud and theft. The four month period was deemed to be a reasonable time in which a vigilant creditor could locate the vehicle and register his lien in the new jurisdiction. The real issue is the meaning of the second section, *N. J. S. A.* 12A:9–103(4), and the type of situation in which it applies. A commentator has noted the difficulties in interpreting this statutory provision:

Subsection (4) suffers from an inherent ambiguity in that it is textually susceptible to two interpretations as to what point in time the property must be 'covered by a certificate of title' for the subsection to apply. Although not articulated in the decision, *Stamper* construes the statute to mean that subsection (4) applies only if the property is covered by a certificate of title (indicating the existence of a security interest) at the time it is brought into the enacting state (New Jersey). However, another possible interpretation is that subsection (4) applies if the property is covered by a certificate of title (indicating the existence of a security interest) at the time of the transaction under scrutiny * * * even though this may be subsequent to entry.

[Comment, 47 *Boston Univ. L. Rev.* 430, 433 (1966)]

The case referred to in the note, *The First Nat'l Bank of Bay Shore v. Stamper,* 93 *N. J. Super.* 150 (Law Div. 1966), is still considered to be the leading case on the issue at bar. In *Stamper,* the court held that the conditional seller's assignee could recover from the defendant who had bought a used automobile from the conditional buyer. The conditional seller's security interest had been validly perfected in New York, and the conditional buyer had sold the car within four months of moving to New Jersey, under a "clean" certificate of ownership issued by the Division of Motor Vehicles. The conditional seller did not file his security interest within four months of the transfer of the vehicle to New Jersey. Nevertheless, the court found *N. J. S. A.* 12A:9–103(3) applicable and the innocent purchaser from the conditional buyer was held liable.

*Stamper* relied heavily on *Casterline v. General Motors Acceptance Corp.,* 195 *Pa. Super.* 344, 171 *A.* 2d 813 (Super. Ct. 1961); *Churchill Motors, Inc. v. A. C. Lohman, Inc.,* 16 *A.D.* 2d 560, 229 *N. Y. S.* 2d 570 (App. Div. 1962), and *Al Maroone Ford Inc. v. Manheim Auto Assoc., Inc.,* 205 *Pa. Super.* 154, 208 *A.* 2d 290 (Super. Ct. 1965). *Stamper* was in turn relied on by the trial court in the instant case. The Appellate Division herein questioned the validity of this authority. It noted that *Casterline* was concerned with transactions which took place before the enact-

ment of U.C.C. 9–103(4) in Pennsylvania and had not even discussed the effect of that subsection. As recognized by the Appellate Division, *Churchill Motors* and *Al Maroone, supra,* erroneously relied on Casterline. The Appellate Division also rejected the comment of the Editorial Board of the Uniform Commercial Code with respect to subsection (4).

> Subsection 4 is new to avoid the possible necessity of duplicating perfection in the case of a vehicle subject to a certificate of title law requiring compliance therewith to perfect security interest. The certificate of title law requirements are adopted as the test for perfection.

This comment was also relied on by the *Stamper* court, but the Appellate Division refused to consider it because our legislature did not include it in the Code comments which follow *N. J. S. A.* 12A:9–103.

To compound our difficulties, the explanatory comment 7 to *N. J. S. A.* 12A:9–103 is not free of ambiguity.

> (7) Collateral other than accounts, contract rights, general intangibles and mobile equipment may be brought into this State subject to a security interest which has attached and may have been perfected under the laws of another jurisdiction. If the property is covered by a certificate of title, subsection (4) applies. In other cases, under subsection (3) this Article applies from the time the collateral comes into this state, except that (1) validity of the security interest is determined by the law of the jurisdiction where it attached (unless pursuant to an understanding of the parties the collateral is brought here within 30 days thereafter) and (2) if the security interest was perfected in the jurisdiction where the collateral was kept before being brought here, it continues perfected in this state for four months after the collateral is brought in, although the filing requirements of this Article have not been complied with here. After the four month period the secured party must comply with the perfection requirements of this Article (i. e., must file if filing is required).

The comment does not address the significance of the timing of the procurement of the certificate of title. Thus, neither the statute nor the commentary thereto clearly indicates

whether *N. J. S. A.* 12A:9–103(3) or (4) applies under the facts at bar.

Insofar as the case law is concerned, the majority view is that if a security interest is perfected under the law of the jurisdiction in which it attaches, its priority cannot be defeated by the unauthorized securing of a "clean" certificate of title in another jurisdiction. *Associates Realty Credit Ltd. v. Brune,* 89 *Wash.* 2d 6, 568 *P.* 2d 787 (1977); *Community Credit Co. v. Gillham,* 191 *Neb.* 198, 214 *N. W.* 2d 384 (1974); *General Motors Acceptance Corp. v. Long-Lewis Hardware Co.,* 54 *Ala. App.* 188, 306 *So.* 2d 277 (Cir. Ct. App. 1974) cert. denied, 293 *Ala.* 752, 306 *So.* 2d 282 (1974); *First Nat'l Bank v. Stamper, supra.* The Supreme Court of Texas held to the contrary in *Phil Phillips Ford, Inc. v. St. Paul Fire & Mar. Ins. Co.,* 465 *S. W.* 2d 933 (Tex. 1971), ruling that once a Texas certificate of title issued, the applicable law was that of Texas and under its statutes only a lien actually noted on the certificate could be asserted against an innocent purchaser. As with the New Jersey statutes, the Texas statutory codification of the U.C.C. had omitted the comment to subsection (4) relied on in *Stamper.*

The 1972 amendments to Article 9 of the U.C.C. changed section 9–103. Some of the revisions were substantive, but the major purpose of the new section was one of clarification.

### OFFICIAL REASONS FOR 1972 CHANGE

The section has been completely rewritten to clarify the relationship of its several provisions to each other and to other sections defining the applicable law.

[Uniform Commercial Code (U. L. A.)
§ 9–103. (1977 pamphlet)]

Although our legislature has not yet enacted the 1972 amendments to Article 9,[2] we believe it is appropriate to

---

[2]No bill calling for passage of the 1972 amendments to Article 9 has been submitted in our legislature. However, in both 1974 and in 1976 Sen. Maressa introduced Senate Joint Resolutions which would have established a commission to study the desirability of en-

accord some deference to the views of the Code drafters where they might shed light on the instant problem. Under the revised section 9–103, a professional buyer in the business of selling goods of the particular type involved, such as Princeton Porsche-Audi, would be defeated by the claim of the secured party, but a non-professional (consumer) buyer in such a position would prevail.

U.C.C. 9–103(2)(d), the amended code section provides:

> If goods are brought into this state while a security interest therein is perfected in any manner under the law of the jurisdiction from which the goods are removed and a certificate of title is issued by this state and the certificate does not show that the goods are subject to the security interest or that they may be subject to security interests not shown on the certificate, the security interest is subordinate to the rights of a buyer of the goods who is not in the business of selling goods of that kind to the extent that he gives value and receives delivery of the goods after issuance of the certificate and without knowledge of the security interest.

The commentary to revised section 9–103, applicable to 9–103(2)(d), states:

> (d) If a vehicle not described in the preceding paragraph (i. e., not covered by a certificate of title) is removed to a certificate state and a certificate is issued therefor, the holder of a security interest has the same 4-month protection, subject to the provision discussed in the next paragraph of Comment. (e) Where 'this State' issues a certificate of title on collateral that has come from another state subject to a security interest perfected in any manner, problems will arise if this state, from whatever cause, fails to show on its certificate the security interest perfected in the other jurisdiction. This state will have every reason, nevertheless, to make its certificate of title reliable to the type of person who most needs to rely

---

acting the 1972 amendments to Article 9. Both resolutions died in committee.

As of the date of publication of the 1977 Pamphlet on the Uniform Commercial Code, cited *supra*, the following states had adopted the 1972 amendments to Article 9: Arizona, Arkansas, California, Connecticut, Illinois, Iowa, Kansas, Minnesota, Nevada, North Carolina, North Dakota, Oregon, Texas, Virginia, West Virginia and Wisconsin.

on it. Paragraph (2) (d) of the section therefore provides that the security interest perfected in the other jurisdiction is subordinate to the rights of a limited class of persons buying the goods while there is a clean certificate of title issued by this state, without knowledge of the security interest perfected in the other jurisdiction. The limited class are buyers who are non-professionals, i. e., not dealers and not secured parties, because these are ordinarily professionals.

Turning to our statute in its present form, we feel constrained to differ with the Appellate Division's conclusion that under *N. J. S. A.* 12A:9–103(4) a professional buyer who purchases a vehicle with a clean certificate of title must prevail over the holder of a valid, but undisclosed, foreign lien. While we recognize that there is authority for this view, *Phil Phillips Ford, Inc., supra,* nevertheless we favor an interpretation of *N. J. S. A.* 12A:9–103(3) and (4) which protects the interest of the foreign lienholder. This position not only promotes interests of comity but also discourages the fraudulent conduct indirectly sanctioned by the Appellate Division's construction.

We agree with the observation of the Supreme Court of Washington with respect to the narrow scope of subsection (4).

Does the subsection apply to all security interests, or only to those which attach after the certificate is issued? If it was meant to apply to all such interests, there is no way in which a person in the appellant's [a foreign lienholder from a non-title jurisdiction] position can protect himself. It would seem that if the draftsmen and the legislature had intended such a harsh result, the intent would have been more clearly expressed.

> [*Associates Realty Credit Ltd.*
> *v. Brune, supra,* 568 *P.* 2d at 790]

Also pertinent is the succinct observation about subsection (4) in Judge Wright's special concurrence in *General Motors Acceptance Corp. v. Long-Lewis Hardware Co.,*

*supra,* 306 *So.* 2d at 281, that "[i]t certainly was not intended to provide a loophole through which swindlers could pass and defeat a security interest legally perfected where it attached." Thus, we hold that *N. J. S. A.* 12A:9–103(4) should only be applied to goods which at the time of entry into this state are covered by a certificate of title. *N. J. S. A.* 12A:9–103(3) should apply to all goods which are moved into New Jersey from non-certificate of title jurisdictions. If a certificate of title is subsequently acquired, *N. J. S. A.* 12A:9–103(3) remains applicable according to its terms.

With respect to professional buyers such as Princeton Porsche-Audi the four month grace period is absolute, and bona-fide status is no protection. Such buyers need look no further than the upper right hand corner of a Certificate of Ownership issued by New Jersey to know that a vehicle was once registered in another jurisdiction. Where such is the case, the alphabetic notation "Z" is prominently printed. Such a notation should put the buyer on notice that some investigation may be in order. To be completely safe without the necessity of further inquiries, the buyer should purchase such a vehicle only after four months have elapsed since the New Jersey registration date.

Since this case involves a professional buyer, it is not necessary for us to consider whether the same result would occur if an innocent consumer had purchased the automobile directly from Ryan. The 1972 amendments were primarily concerned with clarification of the meaning of 9–103, which was inartfully drafted in the 1962 version, and our holding is supportive of the purposes sought to be served by those amendments and in no sense constitutes a usurpation of the legislative function. However, since resolution of the issue is unnecessary to our disposition of this case, we reserve consideration thereof for an appropriate future case. Thus, our holding is limited to professional buyers in the application of the statute.

The judgment of the Appellate Division is reversed and the judgment of the trial court is reinstated.

*For reversal*—Chief Justice HUGHES and Justices SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER—5.

*For affirmance*—None.