173 N.J. Super. 90 (1980)
413 A.2d 619
CHEMICAL BANK, PLAINTIFF-APPELLANT,
v.
MILLER YACHT SALES, CENTRAL JERSEY BANK & TRUST COMPANY AND JEAN MULLER, A/K/A LAWRENCE MILLEN, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 1980.
Decided February 29, 1980.
*96 Before Judges FRITZ, KOLE and LANE.
Elliot Scher argued the cause for appellant (Benenson & Scher, attorneys).
James F. Sullivan argued the cause for respondent Miller Yacht Sales (Robert F. Colquhoun, attorney).
Craig W. McKeown argued the cause for respondent Central Jersey Bank & Trust Company (McOmber & McOmber, attorneys).
The opinion of the court was delivered by KOLE, J.A.D.
Jean Muller bought in New York a 1975 32-foot Luhrs motorboat (Luhrs) for a cash sales price of $29,000, which was financed by Chemical Bank (Chemical). The retail installment contract-security agreement was assigned to Chemical on June 15, 1976. Within ten days thereafter and after receipt of the boat by Muller, Chemical filed two financing statements, one in the Nassau County Clerk's Office, New York, since the boat was to be stored in Nassau County, and one in the New York City Registrar's Office, New York, as Muller lived in New York City. Neither of these financing statements was signed by Muller. In the security agreement he did not give Chemical express authorization to file them without his signature.
A salesman from Miller Yacht Sales (Sales), of New Jersey, was approached at the New York boat show in January 1977 by Jean Muller, who represented himself to be Lawrence J. Millen. Millen wanted to buy a 36-foot Marine Trader motorboat (Marine Trader) from Sales. Negotiations continued for several months.
On August 26, 1977 Sales sold in New Jersey the Marine Trader to Millen for a cash price of $47,500. Millen gave a cash *97 down-payment of $2,000 and was given a trade-in allowance of $22,500 on the Luhrs. Central Jersey Bank & Trust Company (Jersey Bank) financed the balance of the purchase price and was assigned the retail installment contract as security.
Sales took possession of the Luhrs in New Jersey by a bill of sale dated August 26, 1977 and resold it to someone in Florida on October 3, 1977 for $17,000.
In August 1977 Jean Muller defaulted on his payments to Chemical. Chemical claims that the balance due under its financing arrangement is $34,474.68. In letters of November 4, 1977 to Sales and Jersey Bank, Chemical advised that this amount was the "gross balance" due. However in a letter of November 15, 1977 to Muller, the debtor, Chemical informed him that the "entire net balance of $21,976.11 is now due and payable on or before November 22, 1977."
Chemical notified Sales of its security interest in the Luhrs by telephone on November 2 or 3, 1977 and was informed of the sale of the Luhrs to a third party and the sale of the Marine Trader to Lawrence Millen. By two letters, dated November 4, 1977, Chemical informed Sales and Jersey Bank that it claimed a valid security interest in the Luhrs and demanded immediate possession of the Luhrs or full payment on its financing contract. In its letter to Jersey Bank it also referred to the Marine Trader and its awareness that the Luhrs had been used as a trade towards the Marine Trader (in which Jersey Bank had a security interest) and that Jersey Bank was about to repossess the vessel in which it had its security interest. Chemical suggested that the lines of communication remain open between the banks so that neither would suffer financial loss.
Despite Chemical's communications, Jersey Bank repossessed the Marine Trader when Millen defaulted under the terms of its security agreement and sold it at public sale in December 1977. Efforts to locate Lawrence J. Millen, a/k/a Jean Muller, were unsuccessful.
*98 After trial the judge denied Chemical any relief by way of damages against Sales or Jersey Bank. He found that under the Uniform Commercial Code (UCC) Chemical had a valid perfected security interest in the Luhrs without the filing of a financing statement, that was superior to and valid as against any security or other interest that Sales had therein. He found, further, that Chemical could not recover conversion damages against Sales or Jersey Bank "independent of its rights under Article Nine of the Uniform Commercial Code." He determined that since Sales no longer had the Luhrs in its possession, the fact that it sold the Luhrs did not give rise to a claim against it for conversion of the Luhrs under Article Nine; but rather, the Marine Trader should be considered the proceeds of the disposition of the Luhrs. He held that Chemical's financing statements did not give it a perfected security interest in the Marine Trader  the proceeds of the Luhrs  and, accordingly, its interest was subordinate under Article Nine to Jersey Bank's perfected purchase money security interest in that boat. He asserted that those statements wrongfully indicated that they were authorized to be filed without the debtor's signature thereon. As a result Chemical was denied a money judgment in conversion against both Sales and Jersey Bank but Chemical was declared to have a valid superior interest in the Luhrs as against the interest of Sales therein. Chemical appeals from the ensuing judgment.[1]
Chemical argues that it is entitled to damages from Sales for Sales' conversion of the Luhrs boat and damages from Jersey Bank for its conversion of the proceeds of the Luhrs boat, the Marine Trader.
Except as otherwise indicated below, the rights of the parties here are governed by the law of New York where the *99 security agreement relating to the Luhrs was made and where the Luhrs was then located. N.J.S.A. 12A:9-103(3); IAC, Ltd. v. Princeton Porsche-Audi, 75 N.J. 379 (1978); Royal Store Fixture Co. v. N.J. Butter Co., 114 N.J. Super. 263 (App.Div. 1971).

I
As used hereafter the New York UCC (McKinney) will be referred to as NYUCC. Unless otherwise indicated, all references to provisions of § 9 will relate to NYUCC.
We hereafter hold that the Luhrs is consumer goods and that, accordingly, a financing statement was not required to be filed to perfect Chemical's purchase money security interest therein. § 9-302(1)(d). We note that § 9-302(1)(d), mandating filing of a financing statement to perfect a security interest in a motor vehicle required to be licensed or registered, does not apply to boats. See, N.Y. Veh. and Traf. Law (McKinney), Art. 48, § 2251(6); Art. 46, §§ 2104, 2101(n); chapter 62A, § 159. We also note that there was no requirement that the Luhrs be registered or the security interest therein filed with the Federal Government under the Ship Mortgage Act of 1920, 46 U.S.C.A. § 921 et seq. Additionally, the evidence discloses that in fact no such registration or filing was effected as to the Luhrs. Hence, the secured transaction here involved is subject to § 9 of NYUCC. See, § 9-104(a); Kripke, Practice Commentary to § 9-104, par. 2; R.C. Craig Ltd. v. Ships of the Sea Inc., 401 F. Supp. 1051, 1056-1058 (D.C.Ga. 1975).

II

The Luhrs
Generally, one who exercises unauthorized acts of dominion over the property of another inconsistent with or to the exclusion of the latter's rights therein is liable for conversion, *100 although he acted in good faith and in ignorance of the rights of the owner. McGlynn v. Schultz, 90 N.J. Super. 505, 526 (Ch.Div. 1966), aff'd 95 N.J. Super. 412 (App.Div. 1967).
Damages for conversion (as defined above) of secured property may be awarded under § 9 where it is found that at the time of the claimed conversion the secured party's right in the property involved is a perfected security interest and there has been a default by the debtor that gives the secured party the right to take possession of that property. See § 9-503; First Nat'l Bank of Highland v. Merchant's Mut. Ins. Co., 89 Misc.2d 771, 392 N.Y.S.2d 836 (Sup.Ct. 1977), aff'd 65 App.Div.2d 59, 410 N.Y.S.2d 679 (App.Div. 1978). See also, IAC, Ltd. v. Princeton Porsche-Audi, supra, 75 N.J. at 382-390 and 147 N.J. Super. 212, 214 (App.Div. 1977); First Nat'l Bank of Bay Shore v. Stamper, 93 N.J. Super. 150 (Law Div. 1966); Royal Store Fixture Co. v. N.J. Butter Co., supra; Mammoth Cave Prod. Credit Ass'n v. Oldham, 569 S.W.2d 833, 837 (Tenn. Ct. App. 1977). Cf. Mudge v. Sher-Mart Mfg. Co., 132 N.J. Super. 517, 522 (App.Div. 1975).
The assignment of the retail installment contract relating to the Luhrs to Chemical did not affect the validity of the security interest therein or its status. If such interest was perfected at the time of the assignment, it would remain perfected. § 9-303; § 9-302(2).
It is clear that Chemical, which advanced money for the purchase of the Luhrs, had a perfected purchase money security interest therein. § 9-107(a). The Luhrs fits the description of "consumer goods," for it was "bought for use primarily for personal, family or household purposes." § 9-109(1). The retail installment contract indicated that it was bought for "pleasure," and the trial judge properly found that Muller bought it for personal rather than business use. A financing statement need not be filed to perfect a purchase money security interest in *101 consumer goods such as the Luhrs. § 9-302(1)(d). Nevertheless, Chemical did in fact file financing statements.
Chemical's perfected security interest survived the transfer of the Luhrs by the debtor to Sales unless another provision of NYUCC permits the transferee Sales to take free of that interest. If there is no such other provision, such interest continued in that collateral and in any identifiable proceeds including collections received by the debtor. § 9-306(2).
In the instant case the only provision which would deprive Chemical's perfected security interest in the Luhrs of its priority over Sales' interest would be § 9-307 governing the rights of a buyer of goods as against a secured party. See § 9-312(1). Under § 9-307 a buyer in the ordinary course of business (as defined in NYUCC § 1-201(9)) takes free of a security interest created by his seller even though that interest is perfected and even though the buyer knows of its existence; additionally, in the case of consumer goods, a buyer takes free of a security interest even though perfected if he buys without knowledge of the security interest, for value and for his own personal, family or household purposes, unless prior to the purchase the secured party has filed a financing statement covering such goods.
Sales was not a "Buyer in the ordinary course of business," as defined in NYUCC § 1-201(9), since it did not buy "from a person in the business of selling goods of that kind ..." The debtor Muller acquired the Luhrs for pleasure and was not a boat salesman. Further, Sales did not buy the Luhrs for "personal, family or household purposes" since it was a dealer in boats and bought them for resale. Moreover, even if Sales had purchased for its own personal purposes, it did so after financing statements had been filed by Chemical, the secured party. Thus, Sales did not take the Luhrs free of Chemical's security interest.
Chemical's perfected security interest continued in the Luhrs, which, as indicated, was consumer goods, and it was entitled to possession of that boat under the retail installment *102 contract after Muller defaulted; and this interest and right to possession, superior to any interest of Sales therein, continued in New Jersey for at least four months after the Luhrs was brought into this State without further perfection here within that four-month period by filing a financing statement. §§ 9-103(3), 9-302(1)(d), 9-306(2), 9-307, 9-503; N.J.S.A. 12A:9-103(3), 9-302(1)(d), 9-306(2), 9-307, 9-503. See, IAC, Ltd. v. Princeton Porsche-Audi, supra; Muir v. Jefferson Credit Corp., 108 N.J. Super. 586, 592 (Law Div. 1970). The trial judge properly found as a fact that Sales obtained the Luhrs and resold it within four months of the boat's being brought to New Jersey.
The defaults under the Luhrs agreement which gave Chemical the right to possession thereof consist of the failure to pay amounts due thereunder in August 1977 and the debtor Muller's removal, contrary to the agreement, of the boat from New York to New Jersey at or about that time.
Sales accepted a transfer of the Luhrs as part of the purchase price of the Marine Trader, and thereafter, within the foregoing four months' period, sold the Luhrs for $17,000 to a purchaser from Florida. In so doing Sales exercised the type of dominion over Chemical's right to possession of the Luhrs that made Sales liable to Chemical in damages for conversion.
The provisions of Article 9, Part 5, relating to remedies upon default in secured transactions (§ 9-501 et seq.) do not specifically refer to damages to be awarded in an action for conversion thereunder. Thus, the state common law should be applied to determine the measure of such damages. See, NYUCC § 1-103. The general rule with regard to the measure of damages in conversion is to award the fair and reasonable market value of the property at the time of conversion. Will of Rothko, 56 App.Div.2d 499, 392 N.Y.S.2d 870, 874 (App.Div. 1977), aff'd 43 N.Y.2d 305, 401 N.Y.S.2d 449, 372 N.E.2d 291 (Ct.App. *103 1977); Wm. H. Wise & Co. v. Rand McNally & Co., 195 F. Supp. 621, 629 (S.D.N.Y. 1961).
On the record before us we are able to and do make independent findings of fact with respect to such damages. R. 2:10-5.
Chemical introduced evidence from a claimed standardized reference book that the value of the Luhrs in August 1977 was between $26,500 and $29,400. These figures are highly speculative since, among other things, Chemical's witness did not know the condition of the Luhrs at the time of conversion. Additionally, we have serious doubts about the validity of the reference book used as a source for determining the value of the boat. The $22,500 trade-in value of the Luhrs is unrealistic since Sales was primarily interested in selling the Marine Trader rather than giving true market value for the Luhrs. We are satisfied from our review of the evidence that the fair market value at the time of the conversion is the $17,000 price Sales received in October 1977 when it resold the Luhrs.
Accordingly, a judgment must be entered in favor of plaintiff and against defendant Sales in the sum of $17,000 for the conversion of the Luhrs. We see no valid reason for also awarding prejudgment interest on this amount.
We add that we see no basis in this record for not holding Chemical to its assertion in its letter to the debtor that the amount due under its security agreement in November 1977 was $21,976.11 instead of the $34,474.68 which it claimed was due at trial and in its correspondence with Sales and Jersey Bank.

III

Marine Trader
Chemical claims that it is entitled to a judgment against Jersey Bank for conversion of the proceeds of the Luhrs, i.e., the Marine Trader for which the Luhrs was given as part payment.
*104 In the circumstances of this case considerations of fairness and equity satisfy us that the awarding of such relief in favor of Chemical is not justified. See Kaplan v. Walker, 164 N.J. Super. 130 (App.Div. 1978); Muir v. Jefferson Credit Corp., supra.
Thus, we believe that in this case the term "proceeds," as defined in § 9-306(1), should not be interpreted as covering the Marine Trader, even though by definition it includes whatever is received when collateral is exchanged or otherwise disposed of and may consist of property other than cash.
The purchase price of the Luhrs was $29,000. It was used as a down payment on the much more substantial Marine Trader, the purchase price of which was $47,500. Jersey Bank financed $23,000 of that purchase price remaining after the trade-in. In the rather extraordinary circumstances here, its relationship to the Luhrs was so attenuated and remote that it reasonably cannot be considered as having financed the "proceeds" of that boat. It is accordingly inappropriate to conclude that as against Jersey Bank the Marine Trader represented the proceeds of the smaller boat so that Chemical's perfected security interest in the Luhrs attached to the Marine Trader as "proceeds" thereof. Jersey Bank's purchase money security interest in the Marine Trader was a continuing one until it was fully paid under its security agreement, and in our view that interest was superior to any claim which Chemical could assert against that boat as "proceeds."
Even if, however, the Marine Trader is considered proceeds of the Luhrs, Chemical is not entitled to damages against Jersey Bank for conversion by reason of the sale of the Marine Trader.
We express no opinion as to whether under the facts here, pursuant to § 9-402(2)(b), Chemical's rights in the proceeds represented by the Marine Trader might have been vindicated by the award of conversion damages against Jersey Bank simply by reason of its filing of financing statements in New York. *105 Neither in its brief nor on oral argument before us was that contention raised by Chemical. Instead, in connection with its rights against Jersey Bank and the proceeds represented by the Marine Trader, Chemical relied on the fact that the financing statements were properly filed under § 9-402(2)(c).[2] Accordingly, we treat the issue here as thus framed.
Moreover, Chemical chose to file under § 9-402(2)(c) rather than (b) to protect its interest in the proceeds of the Luhrs. It should be bound by this choice.
§ 9-306(3)(a) provides that the security interest in proceeds is a continuously perfected security interest if the interest in the original collateral was perfected but it becomes unperfected ten days after receipt of the proceeds by the debtor unless, among other things, a filed financing statement covering the original collateral also covers proceeds. As indicated, the financing statements filed by Chemical in New York were filed under § 9-402(2)(c), a provision apparently appearing only in the NYUCC. It does not appear in the New Jersey version of the UCC. See, N.J.S.A. 12A:9-402(2). Under § 9-402(2)(c) a financing statement is sufficient although it is signed only by the secured party when it is filed to perfect a security interest in collateral under a security agreement signed by the debtor and authorizing the secured party to file a financing statement. That section further provides, however, that such a financing statement must state that it is filed in accordance with a security agreement signed by the debtor and authorizing the filing of a statement by the secured party.
Although each of the financing statements filed by Chemical provides that it covers the Luhrs and the proceeds *106 thereof, Chemical checked the provision of the statement which indicates that it is filed without the debtor's signature to perfect a security interest in collateral under a security agreement "signed by debtor" authorizing the secured party to file the statement. It did not check the provision that it was filed without such signature to perfect a security interest in collateral "which is proceeds of the original collateral described" in which a security interest was perfected (i.e., § 9-402(2)(b)). It is undisputed that the security agreement signed by the debtor did not, in fact, authorize the secured party alone, Chemical, to file the financing statements.
Chemical argues that we should imply such authority from the security agreement itself. Such implication would contravene § 9-402(2)(c), which contemplates an express authorization by the debtor that the statement be filed without his signature. The significance of strict compliance with this "New York variation" from the UCC is emphasized by the Practice Commentary of Professor Homer Kripke set forth in the Comment to § 9-402 and § 9-312. He states that use of this provision should not become routine, for the debtor has a great interest in a properly limited financing statement, and that a debtor can protect himself against loss of borrowing sources by refusing to sign a financing statement in which the collateral is described more broadly than in accordance with the intent of the parties. Of course, § 9-402(2)(c) precludes the debtor from having any control of the financing statement filed if appropriate prior authority has been given by him.
Even though the foregoing commentary emphasizes the debtor's rights, an issue not present in this case, we have concluded that the same strict compliance with § 9-402(2)(c) was required in this case where Chemical, as a secured party, seeks refuge in that provision to protect its rights in the Marine Trader as proceeds of the Luhrs under § 9-306(3)(a). Under the facts of this case we do not consider this deficiency merely to be an *107 erroneous but substantial compliance with the requirements of § 9-402(2)(c). Rather, the error was seriously misleading and thus not saved by § 9-402(5).[3]Cf. Bank of No. America v. Bank of Nutley, 94 N.J. Super. 220 (Law Div. 1967).
We note that here it would have been virtually impossible for Jersey Bank to have discovered Chemical's claimed rights in the proceeds of the Luhrs by virtue of the financing statements filed by Chemical, even if Jersey Bank had searched the records in New York. Thus, the name used by the debtor in the Chemical security agreement was different from that which he used when he transacted business in connection with Jersey Bank's security interest in the Marine Trader. To hold that Chemical may obtain rights in the Marine Trader as proceeds, notwithstanding its misleading representation in the financing statements that it had authority to file them without the debtor's signature, is to place a further unwarranted road block with respect to the protection of the rights of Jersey Bank, an innocent good faith purchase money security lender, in the claimed proceeds. It would benefit Chemical at the expense of Jersey Bank without any legal or business justification.
Accordingly, we hold that each of the financial statements filed by Chemical was fatally defective as to proceeds in erroneously stating that it could be filed without the debtor's signature because he authorized such filing. Chemical thus failed to protect its security interest in the Marine Trader as the proceeds of the Luhrs. § 9-306(3). It had no right or interest in the Marine Trader superior to that of Jersey Bank with which the latter interfered. Jersey Bank is thus not liable to it for conversion of that boat.
We add that even if the New York financing statements were not defective, it would appear that the failure of Chemical to perfect its claimed security interest in the proceeds represented *108 by the Marine Trader by filing a financing statement here within four months of the Luhrs' arrival in New Jersey serves to defeat any rights that it may assert against Jersey Bank with respect to the Marine Trader. The Luhrs came into New Jersey on or about August 26, 1977 and, within four months thereafter, by early November 1977, Chemical was aware of that fact. Although Chemical was not required to file a financing statement here within that four-month period to perfect its security interest in the Luhrs, it would appear that such filing in New Jersey was required at least within that period to perfect its claimed security interest in the Marine Trader as the proceeds of the Luhrs. See § 9-103(3); N.J.S.A. 12A:9-103(3); § 9-306(3)(a); N.J.S.A. 12A:9-306(3)(a); UCC Comment 7 to § 9-103 and N.J.S.A. 12A:9-103; IAC, Ltd. v. Princeton Porsche-Audi, supra, 75 N.J. at 383, 385.
We have considered the other arguments advanced by Chemical and find them to be without merit.

IV

Conclusion
The judgment in favor of Miller Yacht Sales, to the extent that it denies Chemical's claim for conversion of the Luhrs, is reversed and a judgment for $17,000 shall be entered in favor of plaintiff Chemical Bank and against defendant Miller Yacht Sales. The judgment in favor of Central Jersey Bank & Trust Company and against plaintiff Chemical Bank is affirmed in all respects.
No costs to any party as against any other.
NOTES
[1] A partial summary judgment was also entered in favor of Jersey Bank and against Sales requiring indemnification by Sales of any money judgment entered against Jersey Bank. The validity of that judgment is not before us.
[2] Chemical's rights in the Marine Trader as proceeds are governed by the law existing in 1976 when its security interest in the Luhrs was perfected. In 1977, § 9-402(2) was amended and, among other things, relettered (c) of § 9-402(2) to (e). N.Y.L. 1977, c. 866, § 26.
[3] Under the 1977 amendment to the New York statute, this provision is now § 9-402(8). See n. 2 supra.