306 So.2d 277

**GENERAL MOTORS ACCEPTANCE CORPORATION, a corporation**

v.

**LONG–LEWIS HARDWARE COMPANY, a corporation.**

Civ. 347.

Court of Civil Appeals of Alabama.

Aug. 28, 1974.

Rehearing Denied Sept. 25, 1974.

Max C. Pope, Birmingham, for appellant.

**190**

Stone, Patton & Kierce, Bessemer, for appellee.

BRADLEY, Judge.

On April 27, 1972 J. D. Schrader of 225 W. Campbell Drive, Midwest City, Oklahoma, purchased a 1972 Pontiac Grand Prix, I.D. 2K57Y2A187557, from Joe Coker Pontiac, Inc. of Oklahoma City, Oklahoma. A retail installment contract on the vehicle was executed by the purchaser and assigned by the seller to General Motors Acceptance Corporation, the appellant (hereinafter referred to as GMAC). The outstanding balance on the contract at this time was $3,180.28. A financing statement was also executed at this time and, on May 3, 1972, filed with the Oklahoma County Clerk, the county of debtor's residence.

On May 9, 1972 an Alabama tag, No. 18–5249, was issued by the Probate Judge of Cleburne County, Alabama on the above described vehicle to James D. Schrader of Route 1, Muscadine, Alabama.

On June 1, 1972 a certificate of title was issued by the Georgia Department of Revenue, Motor Vehicle Unit, on the above described vehicle. The owner of the vehicle was listed as James D. Schrader, Box 62, Lincolnton, Georgia. No security interest holders were listed on the Georgia certificate of title. Accompanying the application for the Georgia certificate of title was a bill of sale from W. J. Smith, Route 7, Oxford, Alabama to James D. Schrader.

The next day, June 2, 1972, J. D. Schrader of Trussville, Alabama sold the above described vehicle to Long-Lewis Hardware Company, a corporation, Bessemer, Alabama, the appellee (hereinafter referred to as Long-Lewis) for $4,308. Long-Lewis subsequently sold the vehicle in question.

GMAC filed financing statements with the Probate Judge of Cleburne County, Alabama on August 1, 1972; with the Probate Judge of Jefferson County, Alabama, Birmingham Division, on August 15, 1972; with the Probate Judge of Jefferson County, Alabama, Bessemer Division, on August 21, 1972; and with the Probate Judge of Calhoun County, Alabama in August 1972.

On February 15, 1973 GMAC filed an action in the Circuit Court of Jefferson County, Birmingham Division, against Long-Lewis for conversion of the vehicle. The action was subsequently transferred to the Bessemer Division of the Jefferson County Circuit Court where trial was held before the court sitting without a jury.

The judgment was in favor of Long-Lewis and this appeal is from that judgment.

GMAC says that a security interest perfected on a motor vehicle according to the laws of the state where the property was at the time of the perfection of the security interest and which state does not as a prerequisite to perfection require the notation on the certificate of title of the security interest, remains perfected for four months after its removal to Alabama and cites us to Title 7A, Section 9–103(3), Code of Alabama 1940, as Recompiled 1958.

Section 9–103(3) provides in pertinent part as follows:

"(3) If personal property other than that governed by subsections (1) and (2) is already subject to a security interest when it is brought into this state, the validity of the security interest in this state is to be determined by the law (including the conflict of laws rules) of the jurisdiction where the property was when the security interest attached. . . . If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state."

In the case at bar, according to the laws of Oklahoma, the security interest on the vehicle in question was perfected in Oklahoma on May 3, 1972, when the financing statement was filed with the Court Clerk of Oklahoma County, Oklahoma, the county of debtor's residence. Title 12A, Section 9–301(1), Oklahoma Statutes. Oklahoma does not require as a condition of perfection the notation on the certificate of title of the security interest. King Godfrey v. Rogers, 157 Okl. 216, 11 P.2d 935.

GMAC having perfected its security interest in the vehicle in question according to the laws of Oklahoma, which state was the situs of the vehicle when the security interest was perfected had, according to Alabama law, four months to perfect its security interest in the vehicle after it reached Alabama, and during that four month period, while the vehicle is in Alabama, the continuity of the previously perfected security interest remains unbroken. Section 9–103(3), *supra*; Deposit Nat. Bank of Mobile County v. Chrysler Credit Corp., 48 Ala.App. 161, 263 So.2d 139; First Nat. Bank v. Stamper, 93 N.J.Super. 150, 225 A. 2d 162. The evidence shows that GMAC perfected its security interest in the vehicle within three months after its removal to Alabama.

In the present case the security interest was perfected in Oklahoma and continued to be perfected in Alabama for four months after May 9, 1972, the date that an Alabama registration was obtained for the automobile. Prior to the expiration of the four month period, Long-Lewis bought the car in question.

Appellee contends, however, that since the vehicle was taken to Georgia where a clear certification of title was obtained, i. e., one not containing a notation of a prior lien, that Long-Lewis should not be penalized for Schrader's failure to list on his Georgia application the security interest of GMAC.

Georgia is a certificate of title state that requires the notation on the certificate of title of the security interest in order for it to be perfected. Title 68, Section 421a(b), Georgia Code. But it is also provided by Georgia law that if the security interest is not shown on another state's certificate of title, the security interest so perfected in

that other state remains perfected for six months after the first Georgia certificate of title has been issued. Title 68, Section 421a(d)(2)(B), Georgia Code.

Surely this provision of the Georgia law would permit GMAC to perfect its security interest in Georgia within six months of the issuance of the clean certificate of title to Schrader and during that period would remain perfected in Georgia.

■ The evidence shows that the vehicle was carried into the State of Georgia on June 1, 1972 and was sold to Long-Lewis on June 2, 1972. The sale obviously occurred during the time that GMAC's security interest was valid in Georgia. Hence, we must conclude that the issuance of the Georgia certificate had no effect on the validity of GMAC's security interest at the time of the sale of the vehicle to Long-Lewis in Alabama. In either state, the security interest of GMAC was in force and effect at the time of the sale to Long-Lewis and GMAC's interest in the vehicle could not be destroyed by Long-Lewis' reliance on the Georgia certificate of title. Title 7A, Sec. 9–103(3), Alabama Code, *supra*; Title 68, Sec. 421a(d)(2)(B), Georgia Code, *supra*.

Appellee also argues that Section 9–103 (4) of Title 7A, Alabama Code, should be applied in this instance rather than Section 9–103(3). Section 9–103(4) is as follows:

"(4) Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."

In support of its argument that this court should be governed by the provisions of Section 9–103(4), *supra*, the appellee urges this court to follow the case of Phillips–Ford, Inc. v. St. Paul Fire and Marine Ins. Co., 465 S.W.2d 933, 42 A.L.R.3d 1158. In

that case the Texas Supreme Court said that they could find nothing in the language of their equivalent to our Section 9–103(4) to suggest that when property is brought into Texas from a state that does not require as a condition of perfection a notation on the certificate of title of the security interest [Oklahoma] that the perfection of such security interest should not be determined by the laws of the state that issued the new certificate, i. e., Texas. In other words, a lien may not be enforced against an innocent purchaser in Texas unless the previously established security interest is noted on the Texas certificate of title.

■ The Texas decision is contrary to the one reached by this Court in Deposit Nat. Bank of Mobile County v. Chrysler Credit Corp., *supra,* wherein we held, in effect, that Section 9–103(4) applies only in those states where the notation of the security interest is required on the certificate of title as a condition of perfection. This permits security interests noted on foreign title certificates to be preserved without further action on the part of the security interest holder. Oklahoma does not require as a condition of perfection the notation of the security interest on the certificate of title, and Section 9–103(4) would not be applicable.

The appellee also cites the case of GMAC v. Manheim Auto Auction, 25 Pa.D. & C.2d 179, 57 Lanc.L.Rev. 457. The court held there that the adoption of the Uniform Commercial Code in Pennsylvania did not alter the law in Pennsylvania that a lien shall not operate as notice unless and until a statement of the lien is noted on the certificate of title. The case of Casterline v. GMAC, 195 Pa.Super. 344, 171 A.2d 813, was decided later by the Supreme Court of Pennsylvania which reached a contrary conclusion on similar facts; hence, we must conclude that the *Casterline* case overrules the *Manheim Auto Auction* case.

Long-Lewis concludes by saying that it did everything it could do to ascertain the authenticity of the ownership of the vehicle prior to the purchase. It contacted the

Georgia Motor Vehicle Unit and asked if the application contained any prior lien-holders, and it did not. The F.B.I. was contacted to determine whether the vehicle was stolen; it was not. Long-Lewis then asks what else should it have done?

An examination of the application for a Georgia certificate of title would have revealed that the vehicle was registered in Alabama, a non-title state. An investigation, based on this information, could have aroused such a strong suspicion of the ownership of the vehicle that an immediate purchase would have been discouraged. Nevertheless, purchasers in Alabama of automobiles which have been brought into this state on which a security interest has been perfected will just have to assume the risk of a prior perfected security interest. The period of risk would extend for four months after the vehicle has been brought into Alabama. Section 9–103(3), *supra*; also see Churchill Motors, Inc. v. A. C. Lohman, Inc., 16 A.D.2d 560, 229 N.Y.S.2d 570.

In the instant case, GMAC's security interest was in full force and effect in Alabama when Long-Lewis bought the car which was the subject of GMAC's security interest; hence, GMAC's claim is superior to the claim of Long-Lewis and the trial court erred to reversal in not finding for GMAC and against Long-Lewis.

GMAC claimed $3,180.28, which was the unpaid balance on the conditional sales contract for the 1972 Pontiac. We, therefore, render a judgment here in favor of GMAC for the amount of $3,180.28 plus interest at six percent from June 2, 1972 to January 31, 1974, the date of the judgment in the trial court.

Reversed and rendered.

HOLMES, J., concurs.

WRIGHT, P. J., concurs specially.

WRIGHT, Presiding Judge (concurring specially):

I concur in the result of the opinion. However, I would not consider the fraudulent procuring of the Georgia certificate of title of any force and effect. The purpose of Section 9–103 is to provide rules for determining perfection and validity of security interests attached to various property which is transported from an original state into the forum state. Section 9–103(3) covers the usual rules relating to mobile personal property. Section 9–103(4) covers the unusual articles of personal property, such as autmobiles, for which the laws of the various states may require special indicia of ownership, to-wit: certificates of title. If the statutes of the state of the origin of ownership require not only a certificate of title but further provide that security interests attached thereto must be perfected by entry on the certificate of title, Section 9–103(4) removes the various filing requirements of the preceding sections of Section 9–103. The provisions of Section 9–103 contemplate legal transactions in the usual course of commerce. It does not contemplate the entry of fraudulent and illegal acts into such transactions. It appears to me that the securing of fraudulent or counterfeit certificates of title could no more defeat the validity of a duly perfected security interest than such acts could defeat the validity of the title itself.

The purpose of Section 9–103(4) is merely to give notice by providing a method other than the filing of a security interest as provided by Section 9–103(3). It certainly was not intended to provide a loophole through which swindlers could pass and defeat a security interest legally perfected where it attached. If such were the case, security interests perfected in states requiring certificates of title, and which states provided for perfection by entry on the certificate, could be defeated by the securing of a fraudulent clean certificate in another state.

It appears clear to me that the certificate of title referred to in Section 9–103(4)

is that issued in the state where the security interest arose and attached. A "clean" certificate fraudulently obtained subsequently in another state is not anticipated and cannot defeat the perfected security interest. In the case at hand Section 9–103(4) does not apply in any event, for the security interest of GMAC was not perfected by entry on a certificate of title. It was perfected by filing in Oklahoma and continued perfected in Alabama for four months after the automobile was brought into the state. The securing of a "clean" certificate in Georgia had no effect.