306 So.2d 282

**In re GENERAL MOTORS ACCEPTANCE CORPORATION, a corporation**

**v.**

**LONG–LEWIS HARDWARE COMPANY, a corporation.**

**Ex parte LONG–LEWIS HARDWARE COMPANY, a corporation.**

**SC 991.**

Supreme Court of Alabama.

Nov. 21, 1974.

Rehearing Denied Jan. 9, 1975.

Stone, Patton & Kierce, Bessemer, for petitioner.

No brief for respondent.

McCALL, Justice.

Petition of Long-Lewis Hardware Company, a Corp., for Certiorari to the Court of Civil Appeals to review and revise the judgment and decision of that Court in General Motors Acceptance Corp. v. Long-Lewis Hdw. Co., a Corp., 54 Ala. App. 188, 306 So.2d 277.

Writ denied.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and JONES, JJ., concur.

ON REHEARING

McCALL, Justice.

Application for rehearing overruled.

MERRILL, COLEMAN, HARWOOD, BLOODWORTH and MADDOX, JJ., concur.

HEFLIN, C. J., and FAULKNER and JONES, JJ., dissent.

JONES, Justice (dissenting).

When this petition was initially before us for our preliminary consideration, I agreed with the members of the Court that it should be denied. I later reversed my own thinking when it again appeared before us on application for rehearing as I had then begun to question the correctness of the Court of Civil Appeals' decision. This was because I was unable to resolve to my satisfaction when, if ever, one could rely upon a "clean" certificate of title; that is, one on which there is no notation of an existing lien or security interest. I was unable to find anything in the decision that pointed to when this could be done. For this reason and because the decision presents questions of first impression, I think it is imperative that we review it. Additionally, this decision will apply to the Uniform Title Law in this State which be-

came effective on October 1, 1974 (identical to the Georgia law), hence this dissent which reflects my further study of the issues involved.

I will not again set out the facts or a statement of the issues involved since this is clearly discernible from the opinion of the Court of Civil Appeals.

Title laws are enacted so that certificates of title to motor vehicles may be issued which show the ownership and the existence of any liens thereon. Broad powers are vested in the officials who make this determination. Such certificates become the monument of title of ownership of the vehicles and the record of liens thereon. The title law becomes the exclusive method for perfecting and giving notice of liens on motor vehicles, and liens thereon are exempted from being filed or recorded under all other statutes. Unless and until security interests or liens are perfected, they are not valid as to subsequent purchasers and holders of liens as they would not have notice thereof.

I shall briefly refer to what I think are the basic errors in the decision of the Court of Civil Appeals.

I.

The Court of Civil Appeals held that GMAC had four months under Title 7A, § 9–103(3), Code of Alabama, to file its lien after the vehicle came into Alabama. I don't think this subsection applies. It appears to me that § 9–103(4) governs as it states § 9–103(3) does not apply where the property is covered by a certificate of this state or of any other state which requires liens to be noted thereon, and the law of the state that issued the certificate applies. Georgia is such a state. Unless I am mistaken, there can be only one certificate outstanding at any time, and it shall be accepted in all states in the United States as denoting the ownership of the vehicle and the existence or nonexistence of liens thereon. Yet the Court of Civil Appeals refused to recognize or give any considera-

tion to the certificate which was duly and legally issued in Georgia, and upon which Long-Lewis relied in purchasing the vehicle. To apply Alabama law and not Georgia law (i.e., to hold that § 9–103(3) governs instead of § 9–103(4) is tantamount to holding that, because the Georgia certificate of title is deficient for failure to disclose the security interest, the Georgia certificate is to be treated as though it never existed—all of which appears to strike at the purpose of the title law.

II.

In my judgment the Court of Civil Appeals erred in holding that GMAC had six months to perfect its lien in Georgia. Perfection is governed by § 68–421a in which it is repeatedly stated that until the security interest or lien is perfected as provided therein, it shall not be valid against subsequent purchasers or holders of liens. This section contains a procedure for the perfecting of liens on vehicles purchased in Georgia and upon those brought into Georgia from other states. Subsection b provides for perfection by the owner and subsection c by the holder of a lien. In all cases, if there is an existing certificate, it must be surrendered to the Commissioner, and any lien noted thereon must be noted on the one issued by the Commissioner. The Commissioner mails or delivers the certificate to the holder of the lien with a nonnegotiable copy for the owner, which the holder is directed to mail or deliver to the owner. In the absence of a lien, the certificate is delivered to the owner. (68–412a).

A procedure is also provided in § 68–421a in cases where the holder fails to deliver the outstanding certificate to the Commissioner. The part of this section which relates to automobiles brought into Georgia from another state reads:

"(d) If a vehicle is subject to a security interest or lien when brought into this State, the validity of the security interest or lien is determined by the law of the jurisdiction where the vehicle was when

the security interest attached, subject to the following:

" . . .

"(2) If the security interest or lien was perfected under the law of the jurisdiction where the vehicle was when the security interest attached, the following rules apply:

"(A) If the name of the holder of a security interest or lien is shown on an existing certificate of title issued by that jurisdiction, his security interest or lien continues perfected in this State.

"(B) If the name of the holder of a security interest or lien is not shown on an existing certificate of title by that jurisdiction, the security interest or lien continues perfected in this State for six months after a first certificate of title of the vehicle is issued in this State, and, also, thereafter if, within the six-month period, it is perfected in this State. The security interest or lien may also be perfected in this State after the expiration of the six-month period; in that case perfection dates from the time of perfection in this State.

"(3) If the security interest or lien was not perfected under the law of the jurisdiction where the vehicle was when the security interest was created or the lien attached, it may be perfected in this State; in that case, perfection dates from the time of perfection in this State.

"(4) A security interest or lien may be perfected under paragraph (2)(B) or paragraph (3) of this subsection either as provided in subsection (b) or by the holder of the security interest or lien delivering to the commissioner a notice of the security interest or lien in the form the commissioner prescribes and the required fee."

It is obvious to me that the Court of Civil Appeals took subsection (d)(2)(B) out of context. The owner must, within thirty days after bringing a motor vehicle into Georgia, register the same and obtain a license for it. (Section 68–221) The application for registration requires the owner to give as much or more information than the application for the certificate of title, including the amount of any liens thereon and the names and addresses of the lienholders. If and when such owner obtains his license, the certificate of title is issued. The Commissioner must note on the certificate the holder of any security interest, the type of agreement and the type of lien and order of priority, etc. However, if the application is based upon a certificate of title on which the liens are to be noted, then the Commissioner merely notes the liens shown on that certificate (§ 68–411a), and this notation of itself perfects the lien.

The point is that if your take subsection (d)(2)(B) out of context and hold that the law does not require a certificate of title issued in Georgia to show a security interest which may be perfected within six months, then you must also take subsection (d)(2)(A) out of context and hold that it is not necessary to note upon the certificate a lien noted upon a certificate from a title state, although such certificate is delivered to the Commissioner. But, as indicated above, a certificate of title is not issued in Georgia until the outstanding certificate is delivered to the Commissioner or the form submitted in lieu of the certificate is filed with the Commissioner, as provided by § 560–10–12–.03 of the Rules and Regulations which reads as follows:

"When an owner makes application for a Georgia Certificate of Title on a vehicle from a title state, the owner will submit the title certificate from such other state to the Commissioner with the application for title; should such title certificate be unavailable for the reason that the laws of the State issuing the outstanding title permit the lien or security interest holder to have and keep possession of the certificate of title, then the owner making application for Georgia Certificate of Title will submit Form T–17, Affidavit of the Title Held for Lien or Security

Interest, with his application in lieu of such title certificate."

Unless the Commissioner notes on the title certificate the outstanding security interest in a nontitle state, subsequent purchasers or holders of liens would have no notice thereof.

The Court of Civil Appeals did not refer to the procedure under subsection (d)(4) which authorizes the owner or the holder of a lien to perfect a security interest on a motor vehicle which is brought into Georgia from a nontitle state.

In summary on this point, § 68–421a(d)(2)(B) contemplates that the security interest will appear on the certificate and allow six months thereafter for the creditor to perfect his lien. It does not speak to perfection of a lien where the certificate is "clean" and shows no security interest.

In other words, both (d)(2)(A) and (B) look to the situation where the owner discloses the fact of the security interest in his application for the license and based thereon the Commissioner notes the security interest on the certificate of title. The difference in subsections (A) and (B) is that in (A) there is already an existing certificate of title bearing thereon the security interest, in which case such lien is perfected automatically. In the case of (B) on the other hand, there is no existing certificate of title showing the lien and the state issuing the new certificate shows the lien for the first time. In the latter event, the creditor has six months to perfect its lien.

### III.

The Court of Civil Appeals observation that Long-Lewis' examination of the application for the certificate would have revealed information that would have made it suspicious of the ownership, in my opinion, is not supported by the law. I cannot believe it was intended by the Uniform Title Law that a purchaser of an automobile under an authentic certificate issued in his state or by an officer in some remote state is under any duty to determine whether such officer discharged duties imposed upon him by the law. The law provides penalties for those making false applications and giving false information. A remedy is also given to those damaged by reason of acts or omissions of the Commissioner or his employees. But be that as it may, my search does not reveal even a suggestion that subsequent transferees or holders of liens, title or rights are invalidated because the application was fraudulent or that the Commissioner or his employees were negligent in failing to discover it.

It may well be that a more in depth consideration of this problem in an adversary setting before this Court upon the granting of the writ would prove that my preliminary study has lead me to erroneous conclusions; and in voting to grant the writ, I certainly reserved the right to change my mind (again) upon final consideration.

It would appear from my present vantage point that the Court of Civil Appeals' opinion and this Court's denial of the writ is reminiscent of the early judicial history in the field of Workmen's Compensation. For a period of at least ten years following the passage of Workmen's Compensation Acts, the appellate courts of this country continued to apply traditional tort concepts in these cases in face of statutory language which had for its purpose the abolition of tort concepts. Here, the opinion which we are asked to review reaches the result which unquestionably would have obtained in the absence of the Uniform Title Law and leaves the purchaser in the same position of uncertainty as he occupied before the passage of the act, i. e., as though there were no certificate of title on which he could rely. The significance of the decision—and tragedy, in my opinion—is that it interprets the Georgia title law which is identical to the Alabama statute that became effective October 1, 1974. If my interpretation of that act is correct, the Court of Civil Appeals' opinion may have ren-

dered futile, at least in one aspect, the action of our state legislature in its passage of the Uniform Title Law.

I would grant the application for rehearing and grant the writ.