357 So.2d 654 (1978)
In re Frank LIGHTFOOT et al.
v.
HARRIS TRUST & SAVINGS BANK, a corporation.
Ex parte Frank Lightfoot and Frank Lightfoot, Jr.
SC 2596.
Supreme Court of Alabama.
March 10, 1978.
Rehearing Denied April 7, 1978.
*655 Marshall H. Fitzpatrick, Birmingham, for petitioners.
Hewitt L. Conwill, Columbiana, for respondent.
ALMON, Justice.
The opinion on original deliverance is withdrawn and the following is the opinion of the Court.
We granted certiorari because this is a case of first impression concerning the interpretation to be given Tit. 7A, § 9-103(4), Code of Alabama, Recompiled 1958 (now 7-9-103(4), Code of Alabama 1975).
The material facts are set out in the opinion of the Court of Civil Appeals, 357 So.2d 651. We are urged to hold that the Alabama Uniform Commercial Code § 9-103(4) does not apply to the facts of this case because Illinois law does not require "indication on a certificate of title of any security interest in the property as a condition of perfection."
We decline to place that interpretation on the statute. To do so, we think, would require a technical and unduly narrow reading of the phrase, "condition of perfection," and would ignore other provisions of Illinois law which require all liens to be noted on any certificate of title issued in Illinois.
The Uniform Commercial Code and the certificate of title laws are the products of commissions which draft uniform laws which are usually adopted by the legislatures of the several states in toto. We are of the opinion that Alabama's version of the Uniform Commercial Code, like that of other jurisdictions, is intended to give full force and effect to certificate of title statutes like Illinois' and only a drafting error prevents the smooth interlocking mesh between the UCC and the certificate of title statutes as intended by the drafters. In interpreting the UCC we must keep in mind the legislative mandate that it is to be liberally construed and applied to promote its underlying purposes and policies, one of which is to make uniform the law among the various jurisdictions. Tit. 7A, § 1-102, Code of Alabama 1940, Recompiled 1958.
*656 The provisions of the Uniform Commercial Code governing security interests in goods (Article 9) was designed to exempt from the filing requirements of those provisions security interests in motor vehicles covered by a statute requiring a certificate of title which indicates thereon security interests in the vehicle. To that end, twenty-eight states, including Alabama and Illinois, adopted the following version of § 9-302(3):[1]
"(3) The filing provisions of this article do not apply to a security interest in property subject to a statute . . .
"(b) of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property."
Subsection 4 of § 9-302 goes on to state:
"A security interest in property covered by a statute described in subsection (3) can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official."
Uniform laws concerning certificates of title and the UCC, intended to complement each other,[2] were adopted at different times in different states, and they were not necessarily adopted in tandem. Thus UCC § 9-103 includes choice of law provisions seeking to cover situations where property subject to a security interest is involved in interstate movements, whether that security interest is perfected under the filing provisions of Article 9 or under a state certificate of title law. Subsection 3 of § 9-103 serves the obvious purpose of covering those situations where the security interest is perfected in another state under the filing provisions of Article 9 or where that state's certificate of title law does not require notation of the security interests on the certificate of title. See, 70 Yale L.J. 995, 1020. Subsection 4 of § 9-103 is designed to cover those situations where security interests in the automobile are perfected under another state certificate of title law; it provides:
"Notwithstanding subsections (2) and (3), if personal property is covered by a certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate."
Comment 3 in the official comment to § 9-103 makes the following observations:
"Section 9-302(2) should be consulted for certain transactions to which the filing provisions of the Article do not apply. Where property is covered by a certificate of title, the governing rule is stated in subsection (4) of this section."
We now come to the meat of the problem. Up to this point, it is apparent that there would be little doubt that the law of another state should be applied if that state's certificate of title law "requires indication on a certificate of title of any security interest in the property as a condition of perfection." However, the certificate of title statutes adopted by the states were not as uniform as the UCC, and some do not mesh with the UCC as intended. The problem lies in the failure of one type of uniform certificate of title statute to include as a "condition of perfection" indication of any security interest on the certificate of title, although it is clearly contemplated that no certificate of title can be issued without such indication thereon. The problem is a definitional one concerning the term of art "perfection."
One commentator has analyzed the various state certificate of title statutes and has *657 found that they mostly fall into one of two types, labeled "Type III" and "Type IV." We quote from the commentator's article:
"Type III
"Eighteen states have certificate of title legislation and require delivery to an official and actual notation on the certificate of title as the exclusive method of perfection. The only states which fit comfortably into the model foreign jurisdiction defined in section 9-103(4) are those with Type III statutes.
"Type IV
"Seventeen states[3] have adopted certificates of title legislation and require notation on the certificate. However, these states make delivery of the required documents to the proper official the only prerequisite for perfection.
"The important difference between Type III and Type IV is that the Type IV statutes do not literally require `indication on a certificate of title . . . as a condition of perfection.' Although they uniformly prescribe that a public official must note the lien on the certificate, the lienholder's interest is perfected in Type IV states as soon as he delivers the documents to the proper official for notation." 34 Albany L.Rev. 251, 258-260.
The author concludes that compliance with Type IV jurisdictions should be enough for the purpose of qualifying under 9-103(4). 34 Albany L.Rev. 251, 260. This view is fully supported by Professor Gilmore in his treatise entitled Security Interests in Personal Property at pages 576-577:
". . . [S]ubsections (3) and (4) of § 9-302 state that the `filing provisions of this Article do not apply' (3), and that the security interest `can be perfected only . . . by indication of the security interest on a certificate of title . . .' (4). These two statements seem to be variant expressions of the same proposition: the security interest is perfected by compliance with the notation mechanism of the title act, not with the filing provisions of Article 9. . . . The language of (4) suggests, however, a somewhat more difficult point: `can be perfected only by . . . indication . .' evidently means `is perfected by the indication.' Although the negative statement in (4) must be construed to carry this positive inference, the inference should not be taken to go to the time of perfection. That is, there should be no inference that the security interest is not perfected until the `indication' is made and becomes perfected only when that ministerial act is performed. The Uniform Act [Uniform Certificate of Title Act] for example, provides that the crucial act is `delivery' to the relevant Department of the application for a certificate; the security interest `is perfected as of the time of its creation if the delivery is completed within ten (10) days thereafter, otherwise as of the time of delivery. The time of perfection should be controlled by the provisions of the title act; the reference in § 9-302(4) should be taken to mean only that `indication' is the ultimate act on which perfection is conditioned."
We hold that it is sufficient for purposes of Alabama UCC § 9-103(4) if the law of another state requires that all certificates of title issued have indicated thereon the security interests in the property, irrespective of whether such indication is a "condition of perfection" or a state official is under a statutory duty to indicate the security interests before issuing the certificate of title. To hold otherwise requires a blind adherence to the technical requirements of § 9-103(4) and defeats the intent of the drafters and of the legislature.
In reference to the Illinois statute, the exclusive method of perfecting security interests in vehicles is through compliance with the provisions of the certificate of title statute.[4] All certificates of title issued in *658 Illinois must contain thereon the names and addresses of any lienholders, in the order of priority as shown on the application.[5] The Secretary of Illinois is under an affirmative duty to note the lienholders on the certificate of title.[6] We hold that the Illinois requirements are sufficient to bring their certificate of title within the meaning of Alabama's § 9-103(4) as a "condition of perfection."
It is further contended that § 9-103(4) does not apply because when the car entered Alabama a certificate of title had not issued in Illinois. Such an interpretation nullifies the relation back features of Illinois' and many other states' laws.[7] See notes 21 and 23, 34 Albany L.Rev. 251, 258-260. Under Illinois law, if the application of title is delivered within 21 days of the attachment of the security interest (usually the date of the sale of the vehicle), then the security interest is perfected as of the date of the attachment (perfection relates back to the date of attachment). § 3-202, supra. South Division Credit Union v. Deluxe Motors, Inc., 42 Ill.App.3d 219, 355 N.E.2d 715, 20 UCC Rep. 807 (1976); Peterson v. Ziegler, 39 Ill.App.3d 379, 350 N.E.2d 356, 19 UCC Rep. 1210 (1976).
The opinion of the Court of Civil Appeals states that the security interest attached on November 11, 1971. Application was made for a certificate of title on November 18, 1971. The Illinois Secretary of State issued the certificate of title, listing thereon the security interest of appellee, on November 30, 1971. The application being made within the twenty-one day period required by Illinois law, the security interest of appellee was perfected as of November 11, 1971.
The Court of Civil Appeals is correct in its interpretation of the requirements of Illinois. Alabama UCC § 9-103(4) is applicable to the facts of this case. The decision of the Court of Civil Appeals is hereby affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, FAULKNER, JONES and SHORES, JJ., concur.
BEATTY, J., dissents.
BLOODWORTH and EMBRY, JJ., concur in dissent.
BEATTY, Justice (dissenting).
Certiorari was granted because this was a case of first impression concerning the interpretation to be given Tit. 7A, § 9-103(4), Alabama Code (Recomp.1958) (now § 7-9-103(4), Code of Ala. 1975).
The facts are set out in the opinion of the Court of Civil Appeals. In gist they show that the purchaser of an Illinois automobile sold it the next day in Alabama, and then eighteen days later it was resold in Alabama to the defendants. Meanwhile, six days after the first sale, in Alabama, the Illinois seller filed an application for a certificate of title in which he listed the plaintiff bank's security interest. The actual certificate of title was issued in Illinois twenty-one days after the original Illinois sale, but was dated as of the date of the sale.
As the Court of Civil Appeals observed correctly, the security interest of the plaintiff attached on the day of the Illinois sale. The question here is, however, whether that *659 security interest was perfected in order to enable it to be asserted against this Alabama buyer.
The Court of Civil Appeals aptly identified the applicable Uniform Commercial Code sections, i. e., Tit. 7A, §§ 9-103(3) and (4), but apparently misconceived the specific issue, for in stating that issue it assumed that the law of the original purchase state (Illinois) requires perfection of a security interest by notation upon the certificate of title. Of course, if that is what the law of Illinois requires, then our § 9-103(4) would operate to make applicable the pertinent Illinois statute. In other words, our § 9-103(4) states:
[i]f personal property is covered by a certificate of title issued under a statute of . . . any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate. (emphasis added)
What does Illinois require to perfect a security interest? Section 3-202(b), Chapter 95½, Illinois Revised Statutes, 1973, which governs perfection of a security interest, states:
A security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if the delivery is completed within 21 days thereafter, otherwise as of the time of the delivery.
It will be observed that this Illinois statute does not require perfection by listing it on the certificate. However desirable that procedure might be, and whatever salutary effect it might accomplish, that is not what Illinois requires. By plain and unambiguous language Illinois has stated that the security interest is perfected by:
(1) Delivery to the Secretary of State (Of Illinois),
(2) Any existing certificate of title,
(3) An application for a certificate of title containing the name and address of the lienholder and the date of his security agreement,
(4) The required fee.
There is not the slightest reference to a requirement that the security interest be listed on the certificate of title as a condition to perfection. It requires little consideration to suppose that any security interest so identified in due course would be listed, but whether that occurs or not, the Illinois legislature has not required it as a condition to perfection. This conclusion is strengthened by other language contained in the same section. For example, subsection 2 provides:
If the security interest was perfected under the law of the jurisdiction where the vehicle was when the security interest attached:
. . . . .
(B) If the name of the lienholder is not shown on an existing certificate of title issued by that jurisdiction, a security interest may be perfected by the lienholder delivering to the Secretary of State the prescribed notice and by payment of the required fee. Such security interest is perfected as of the time of delivery of the prescribed notice and payment of the required fee. (emphasis added).
Again, there is no requirement of any indication upon a certificate of title.
Moreover, in subsection 3 of Section 3-202(c) it is stated that:
If the security interest was not perfected under the law of the jurisdiction where the vehicle was when the security interest attached, it may be perfected in this State . . ..
And in subsection 4:
A security interest may be perfected under paragraph 3 of this subsection either as provided in subsection (b) or by the lienholder delivering to the Secretary of State a notice of security interest in the form the Secretary of State prescribes and the required fee. (emphasis added)
*660 Additionally, in the Source Comment following Section 3-202 of the Illinois statute I find this explanation:
In the usual case where a security interest was created at the time of the sale in the state of Illinois, the lien would have been perfected as of the time of its creation where delivery of the application for certificate of title the former and existing certificate of title, and the name and address of the lienholder, the date of the security agreement, and the required fee had all been forwarded to the Secretary of State within ten days.
. . . . .
It was hoped that the express provisions of section 3-202 of the 1957 law [practically identical to the present language] in regard to security interests would give certainty to the law and would thereby aid the commercial transferability of motor vehicles by making more certain the rights of lienholders and purchasers. (emphasis added)
And as if to mandate compliance with those express provisions, the Illinois legislature stated in Section 3-202(a):
[a] security interest in a vehicle of a type for which a certificate of title is required is not valid against subsequent transferees or lienholders of the vehicle unless perfected as provided in this Act.

In view of the several opportunities given to that body to include in the procedure governing perfection some "indication on the certificate" of the security interest as a condition to perfection, I must conclude that the absence of any such requirement was a deliberate choice.
In reaching this conclusion I have relied upon the plain language of the Illinois statute governing perfection, having found no reported case decided by the Illinois courts on that point. C. Jon Development Corp. v. Pand-Rorsche Corp., 69 Ill.App.2d 469, 217 N.E.2d 416 (1966), cited by the respondent, does not apply. There the seller of the automobile endorsed an existing certificate of title in blank and delivered it to the purchasing automobile dealer who, in turn, sold it for value without notice of the seller's retained security interest. While the Illinois court did quote Section 3-202(a) and (b), it held that the defendant-buyer was a buyer from a dealer who took free of the security interest requirements of 3-202, because the transaction was governed by 3-201 which excepted such transactions by a buyer in the ordinary course of trade.
Notwithstanding the paucity of cases on the requirements of § 9-103(4), this interpretation has support. In the case of In re White, 266 F.Supp. 863 (N.D.N.Y.1967) it was interpreted this way:
The opening language of subsection (4) indicates an intent to provide that where a security interest in personal property is perfected by indication of same upon a certificate of title as required by the statute of another jurisdiction, the provisions of subsection (3) are not applicable. These circumstances or background facts exist here. Since it is stipulated that the security lien was properly perfected under the laws of Virginia, any further attack upon such perfection in any jurisdiction must be based upon the law of that state. No such attack is made here and the filing provisions of subsection (3) are not applicable. Unless construed as above, subsection (4) would have little or no meaning. `There is a presumption against a construction which would render a statute ineffective or inefficient. . .'. Bird v. United States, 187 U.S. 118 at 124, 23 S.Ct. 42, 44, 47 L.Ed. 100. (emphasis added)
Our own Court of Civil Appeals has recognized this requirement:
In other words, one who has a security interest in personal property, perfected in a state which requires the issuance of a certificate of title on such property and the listing thereon of a security interest as a condition of perfection, does not have to protect such security interest by any further action in a state to which the property may thereafter be removed. [Deposit National Bank of Mobile County v. Chrysler Credit Corp., 48 Ala.App. 161, 163, 263 So.2d 139, 141 (1972)]. (emphasis added)
*661 I conclude, therefore, that the Alabama UCC § 9-103(4) does not apply to this case because the applicable Illinois statute, § 3-202(b) does not require any "indication on a certificate of title of any security interest in the property as a condition of perfection." Accord, 34 Albany L.Rev. 251, 259. That much is clear, even though there are ambiguities otherwise contained in our § 9-103(4). What, for instance, is the meaning of the sentence "if personal property is covered by a certificate of title issued under a statute of . . . any other jurisdiction . . ."? (emphasis added) In its opinion the Court of Civil Appeals interprets this language to mean that a certificate of title on the automobile must have been issued as of the time of the transaction in question rather than, as insisted by the petitioner, at the time of entry of the automobile into this state.
I believe the petitioner is correct, and that subsection (4) displaces subsection (3) only when the automobile is "covered by a certificate of title" at the time the automobile comes into this state. Indeed, with the exception of the foreign title certificate statute, § 9-103(3), and the excluded transactions of § 9-104, the whole of Article 9 on secured transactions applies to personal property "within the jurisdiction of this state." Title 7A, § 9-102(1). Surely this language represents a legislative policy requiring property within this state to fall under the perfection requirements of Article 9, unless provided for by § 9-103. Accord, In re Zimmardi, 8 UCC Rep. 1396 (D.Me.1971). When this automobile entered Alabama, no certificate of title upon it had been issued, so clearly it was not "covered" by a certificate of title in order to activate § 9-103(4).
This interpretation finds support when the apparent purpose of § 9-103(4) is applied to innocent parties. For what the drafters obviously intended was to allow the originally perfected certificate of title in the title state (like Illinois) to continue perfected throughout any subsequent interstate movements, controlled only by other statutes limiting the length of time given perfection, such as § 9-403. 34 Albany L.Rev. 251, 269. The effect of § 9-103(4) is to give full and absolute protection to the initially perfected security interest, even though the subsequent innocent purchaser or his creditor received no notice of that outstanding security interest. Thus § 9-103(4) becomes an application of the rule of caveat emptor which ignores the interests of purchasers and creditors in the filing state, such as Alabama. 54 Cornell L. Rev. 610, 621. If that is to be the rule, and it is, then it is not unreasonable to insist upon the requirement of a certificate of title already in existence, "issued," when the collateral comes into Alabama, as the modicum of notice to which the innocent purchaser in Alabama, or his creditor, are entitled.
Because the Alabama title law provision, Tit. 36, § 185(b), which is almost identical to § 3-202 of the Illinois Vehicle Code, was enacted after the initiation of this litigation, any comment upon its effect would be dictum here as it was in the opinion of the Court of Civil Appeals.
Under these facts it is clear that § 9-103(3) governs this case. The applicable language follows:
If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state.
In this case the security interest was perfected in Illinois under Illinois law after the automobile entered Alabama. Under Alabama law, therefore, that security interest should have been perfected in Alabama. Although the stipulation of facts does not expressly state that no subsequent perfection in Alabama has taken place, such a finding is implicit in the opinion of the Court of Civil Appeals. Under those facts, the case should have been remanded to that Court for an adjudication of whatever priority rights in the automobile exist between the parties.
It is clear that the motive of the majority is to put Alabama in line with other states *662 so that our law on the recognition of foreign perfection will correspond with that of others. That such a salutary goal is desirable cannot be questioned. Indeed, the author of this dissent has consistently aligned himself with reforms and improvements in law, e. g., Alabama Law Review 12:253; 13:98; 15:405; 16:351. It is not the goal I quarrel with but the method employed, for the majority "construe" the Illinois perfection statute when its terms could not be plainer and having done so suppress the effect of our own Sections 9-103(3) and (4). In short, not only have the majority legislated for the people of Illinois on the subject of perfection but, in addition, by refusing to follow the clear language of our own Sections 9-103(3) and (4) the majority have surrendered to the foreign state the control of property moving into our own. Even if this were a desirable result for the sake of uniformity, it is a subject for legislative rather than judicial change. Statutes whose clear terms sometimes cause undesirable results are to be preferred over the confusion which results from the attempts by courts to rectify them.
BLOODWORTH and EMBRY, JJ., concur.
NOTES
[1] Interstate Perfection of the Motor Vehicle Security Interest: A Bottleneck in Section 9-103, 34 Albany L.Rev. 251, 254, N. 12 (1970).
[2] The May, 1949, Draft of the Uniform Commercial Code contained a complete title act incorporated into the Code. Security Interests in Motor Vehicles under the UCC: A New Chassis for Certificate of Title Legislation, 70 Yale L.J. 995, 999, N. 31 (1961). Also, see Gilmore, Security Interests in Personal Property, Vol. 1, § 20.8, pp. 572-573 (1965).
[3] Illinois is a Type IV jurisdiction. Since the article was written, Alabama has passed a certificate of title law which would place it in Type IV also. Tit. 36, § 167 et seq., Code of Alabama 1940, Recompiled 1958.
[4] Section 3-207, Ch. 95½, Ill.Rev.Stat., 1971.
[5] "Each certificate of title issued by the Secretary of State shall contain: . . . 3. The names and addresses of any lienholders, in the order of priority as shown on the application or, if the application is based on a certificate of title, as shown on the certificate; . . ." Section 3-107(a), Chapter 95½, Ill.Rev.Stat., 1971.
[6] "If an owner creates a security interest in a vehicle: . . .(d) Upon receipt of the certificate of title, application and the required fee, the Secretary of State shall either endorse on the certificate or issue a new certificate containing the name and address of the new lienholder, and mail the certificate to the first lienholder named in it." Section 3-203, supra.
[7] Alabama Uniform Certificate of Title and Anti-theft Act has such a relation back provision. It provides that if the necessary papers are delivered within ten days of the creation of the security interest, the security interest is perfected as of the date of creation. Tit. 36, § 185(b), supra.