Plaintiff, Massey-Ferguson Credit Corporation, filed suit against Defendants, Wells Motor Company and George R. Jeffcoat, claiming damages for conversion of a corn combine in which Plaintiff held a security interest perfected in accordance with the laws of South Carolina.
The combine was originally bought by Wade Drake from Presley Equipment Company of South Carolina; and Massey-Ferguson was assigned a security interest which it recorded on September 30, 1974. In 1976 the combine was sold at auction in North Carolina to Wells Motor Company of Alabama and was delivered to Wells in Dothan on March 21, 1976. After making some repairs and improvements, Wells sold the combine to Jeffcoat on June 1, 1976, within four months after the collateral's removal to this State. A financing statement, executed by Jeffcoat to First National Bank of Ashford, was filed on June 4, 1976. It was undisputed at trial that both Defendants were purchasers for value and without knowledge of Plaintiff's security interest.
Subsequently, Massey-Ferguson located the combine and filed its conversion suit on August 27, 1978. The following day — more than two years after the collateral's removal to Alabama — Massey-Ferguson filed a financing statement in this State.
Wells and Jeffcoat set up, as an absolute defense, Plaintiff's failure to perfect its security interest by filing in accordance with the Uniform Commercial Code, § 9-103 (3), adopted in § 7-9-103 (3), Ala. Code 1975.[1] After an ore tenus
trial of this cause without a jury, the trial Court dismissed the complaint as to both Defendants. Plaintiff appeals.
The issue here presented concerns the interpretation — much disputed — of the above-cited U.C.C., § 9-103 (3), which provides in part as follows:
 ". . . If the security interest was already perfected under the law of the *Page 321 
jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state."
Appellant, Massey-Ferguson, contends that, under § 9-103 (3), it held an absolute priority against other interests acquired during the first four months of the collateral's entry into Alabama; and, given that the sale of the combine occurred during this period, it is therefore irrelevant that they did not file in this State until after the sale.
Appellees, to the contrary, maintain that Massey-Ferguson's security interest, even if perfected at the time of the sale, became unperfected upon Appellant's failure to file in this State within the four-month period following the collateral's removal to Alabama.
The issue before us may be stated in general terms as follows: Does the holder of a perfected out-of-state security interest receive an absolute priority against new interests acquired and filed during the first four-month period, or does his failure to refile locally within the four-month period cause his priority to be displaced? In other words, is the four-month period referred to in § 9-103 (3) a period of absolute perfection? Or is it merely a grace period during which the out-of-state holder must refile if he is to insure against his priority being displaced?
Acknowledging there is authority to support both positions, the trial Court held that "the better reasoned and more equitable" interpretation was that maintained by the Appellees. We agree.
Although other aspects of U.C.C., § 9-103, have been interpreted by the appellate courts of this State,[2] the issue presented on this appeal is one of first impression. Therefore, we look for guidance to the Uniform Commercial Code itself, the official Comments to the Code, the writings of commentators, and the case law of other jurisdictions.
We are urged to begin our analysis of the text by noting that, despite the confusion that has surrounded its meaning, the text from the point of view of grammatical construction tends to support one interpretation to the exclusion of the other. Appellant would have the phrase, "if within the four-month period it is perfected in this state," refer only to the words immediately preceding it, "and also thereafter." Appellees counter, however, that were this the case, the text would necessarily require an additional comma so as to create two independent clauses, only the second of which would then be modified by the conditional phrase ending the sentence. But these arguments — likely to be appreciated only by the strict grammarian — are overly technical in nature and are hardly dispositive of this issue.
We are more impressed by the observation that if the drafters had intended Appellant's meaning, much of the existing text would constitute confusing surplusage. The words, "and also thereafter if within the four month period it is perfected in this state," would be unnecessary as stating what occurs "thereafter," i.e., after the four-month period, as this is already made clear by the sentence which follows:
 ". . . The security interest may also be perfected in this state after the expiration *Page 322 
of the four month period; in such case perfection dates from the time of perfection in this state."
The courts and commentators who have taken the position we adopt today have acknowledged their influence by official Comment 7 to the text.[3] We, too, are persuaded by Comment 7, particularly the following:
 ". . . Subsection (3) proceeds on the theory that not only the secured party whose collateral has been removed but also creditors of and purchasers from the debtor in this state should be considered. The four month period is long enough for a secured party to discover in most cases that the collateral has been removed and to file in this state; thereafter, if he has not done so, his interest, although originally perfected in the state where it attached, is subject to defeat here by those persons who take priority over an unperfected security interest (see Section 7-9-301). . . .
 "In case of delay beyond the four-month period, there is no `relation back'; and this is also true where, in this state, the security interest is perfected for the first time."
While the Comment, like the text, contains an ambiguous, "thereafter," it supports our analysis in two important respects. First, the expressed intention to afford protection to both the out-of-state secured party and interested parties in this State is only consistent with a grace period view of the four months. Under the "absolute perfection" view, Alabama buyers who unwittingly purchase from the debtor collateral perfected in other jurisdictions would receive no protection whatever. Out-of-state secured parties could wait years before locating and reclaiming their collateral in this State; this delay, as a practical matter would often foreclose the innocent Alabama purchaser's own avenues of recourse. Although we are aware that the period of absolute perfection would not apply to an Alabama buyer who purchases after the four months, we note that in the greater majority of cases collateral, which is perfected in another jurisdiction and brought here, is likely to be resold within four months after removal to this State.
Our view, on the other hand, provides a balanced measure of protection to both out-of-state and in-state interested parties. The out-of-state creditor has four months in which to locate his collateral and to file in this State. If he does, his interest continues to be senior to all others acquired during this period. The out-of-state creditor is thus protected and, at the same time, an innocent Alabama buyer is not unduly prejudiced by the four-month maximum delay in pursuing his own remedies.
The last sentence of official Comment 7 above is also revealing and, standing alone, would be dispositive of the issue:
 "In case of delay beyond the four-month period, there is no `relation back'; and this is also true where, in this state, the security interest is perfected for the first time."
The above statement plainly implies that, where there has been a filing within the four-month period, there is "relation back." The concept is applicable only under a "grace period" view of § 9-103 (3). Under Appellant's interpretation, there would be no need for the filing to "relate back" because filing within the four-month period is itself unnecessary. Thus, Appellant's interpretation would render the Comment meaningless.
An additional argument is made in United States v Squires,378 F. Supp. 798 (Iowa 1974), based on the following language of the Comment:
 "The four-month period is long enough for a secured party to discover in most cases that the collateral has been removed and to file in this state; thereafter, if he has not done so, his interest, *Page 323 
although originally perfected in the state where it attached, is subject to defeat here by those persons who take priority over an unperfected security interest (See Section 9-103). Under Section 9-312 (5), the holder of a perfected conflicting security interest is such a person even though during the four-month period the conflicting interest was junior. . . ."
The Squires Court, at 804, reasoned:
 ". . . As noted in Comment 7, the holder of a conflicting security interest during the four-month period will take precedence over the party with the senior security interest if that party does not file within the four-month period. The Court cannot reconcile how a buyer without notice of the security interest can be in a lesser position than the holder of a perfected conflicting security interest arising within the four-month period. At the end of this four-month period, if the person with the senior security interest does not file in the new state to perfect that security interest, the buyer without notice of the security interest should take precedence over that security interest consistent with Comment 7 noted above."
It is relevant to note, also, that although the 1972 amendments to the Uniform Commercial Code have not been adopted by this State, the Comments to the revised text acknowledge the ambiguity of the 1962 text; and, according to the drafters, their meaning is clarified by the proposed Section 9-103 (1)(d)(i) of the 1972 text:
 ". . . if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal . . ."
In view of the plain meaning of the 1972 revisions, we believe our interpretation, in addition to being correct, serves to promote uniformity of the law with respect to commercial transactions, which is itself the underlying principle of the Uniform Commercial Code.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] We agree with the parties that U.C.C. § 9-103 (3) rather than U.C.C. § 9-307 is applicable in that, although both Wells and Jeffcoat were buyers in the "ordinary course of business," in neither case was the security interest created by the seller. See § 7-9-307, Ala. Code 1975.
[2] See, Lightfoot v. Harris Trust Savings Bank, 357 So.2d 654
(Ala. 1978); General Motors Acceptance Corp. v. Long-LewisHardware Co., 54 Ala. App. 188, 306 So.2d 277, cert. denied,293 Ala. 752, 306 So.2d 282 (1974); Deposit National Bank v.Chrysler Credit Corp., 48 Ala. App. 161, 263 So.2d 139 (1972).
[3] See United States v. Squires, 378 F. Supp. 798 (Iowa 1974);Arrow Ford, Inc. v. Western Landscape Construction Company,23 Ariz. App. 289, 532 P.2d 553; J. White and R. Summers, Uniform Commercial Code, pp. 848-849 (1972); Vernon, Recorded ChattelSecurity Interest in the Conflict of Laws, 47 Iowa L.Rev. 346 (1962).